■ JUAN D. REYES, M.D., Respondent, v RAFAEL SEQUEIRA, M.D., et al., Appellants, et al., Defendant. [883 NYS2d 494]—

Appeal from order, Supreme Court, Bronx County (Dianne T. Renwick, J.), entered on or about April 17, 2008, which determined the market value of two properties and directed closings thereon, dismissed, without costs.

In 1971 plaintiff Juan Reyes, M.D., defendant Rafael Sequeira, M.D., and a nonparty physician formed a closely held corporation, SAR. The following year SAR purchased a parcel of land in the Bronx. Plaintiff and defendant then bought out the nonparty's one-third interest in SAR, giving plaintiff and defendant each a 50% interest in it. In 1976 plaintiff and defendant formed another closely held corporation, 91 Graham Avenue Realty Corporation, which purchased a parcel of land in Brooklyn. In 1977 the New York State Department of State dissolved SAR because it had failed to pay franchise taxes; 91 Graham was dissolved in 1980 for the same reason.

In September 2003 plaintiff commenced this action against defendant and the two dissolved corporations asserting causes of action to recover damages for fraud, breach of fiduciary duty and under Business Corporation Law § 720. Plaintiff also seeks an accounting from defendant regarding the corporations' assets and access to the corporations' records. The gravamen of the action is that defendant attempted to sell both the Bronx and Brooklyn parcels without plaintiff's knowledge or consent; defendant transferred 91 Graham's checking and savings accounts to a different bank and removed plaintiff's name as an authorized signatory on transactions involving those accounts; defendant refused to provide plaintiff with the corporations' records; and defendant formed a new corporate entity in 2003, SAR 2003, without consulting plaintiff. Defendant answered the action and asserted counterclaims seeking (1) damages for breach of fiduciary duty and under Business Corporation Law §§ 722, 723 and 724, (2) declarations that defendant owned two thirds of the shares of SAR because plaintiff agreed to transfer one sixth of his interest in that corporation to defendant if he managed the Bronx parcel, and that a contract of sale defendant executed on behalf of SAR regarding the Bronx parcel was valid, and (3) judicial supervision of the winding up of the affairs of SAR pursuant to Business Corporation Law § 1008.

In March 2004 defendant commenced a proceeding pursuant to article 10 of the Business Corporation Law in Supreme Court, Kings County, to wind up the affairs of 91 Graham. Defendant sought permission to sell the Brooklyn parcel and a declaration that he owns two thirds of the shares of 91 Graham and is entitled to two thirds of the net proceeds of the sale of the

parcel. Defendant also sought damages against plaintiff for breach of fiduciary duty and under Business Corporation Law § 720. This proceeding was later consolidated with the Bronx action by an order of Supreme Court, Bronx County.

On January 29, 2007, plaintiff and defendant entered into a stipulation of settlement on the record before Supreme Court. Pursuant to the stipulation

"2. The parties agree that *two court order[ed]* appraisals are to be conducted to determine the present fair market value of each property[,] the Bronx property and the Brooklyn property.

"The parties further agree that the value of the combined properties for purposes of settling this matter[ ] shall be determined by the Court *based upon an average of the two appraisals* performed on each of the properties. . . .

"4. Upon the Court's determination of the settlement value of both p[roperties], the parties agree that the defendant shall be entitled to 55% net of the appraised value of both properties. The plaintiff shall be entitled to 45% of the appraised value of both properties. . . .

"9. The parties agree that a more formal written stipulation of settlement incorporating the settlement entered into this Court today shall be made within 10 days of the return of the report[s] of the two appraisers. The objective being settling all other collateral issues that are the subject of this matter before the Court. . . .

"It is further understood and agreed by and between the above captioned parties and the respective counsels that the formal stipulation referred to above[ ] shall in no way modify or alter or amend the stipulation which is presently being dictated on the record for the Court on this date" (emphasis added).

The stipulation of settlement also contained provisions requiring plaintiff to assume all of the outstanding liabilities concerning the parcels. The parties apparently intended that plaintiff would pay defendant 55% of the net appraised value of both parcels and, in consideration for that payment and plaintiff's assumption of responsibility for the outstanding liabilities concerning the parcels, defendant would assign his interest in the parcels to plaintiff, giving plaintiff sole ownership of both parcels. However, no provision requiring defendant to assign his interest in the parcels to plaintiff was included in the stipulation of settlement.

Supreme Court requested appraisals for both parcels from Skyline Appraisals Inc. and East Coast Appraisals, and the appraisals were performed. While neither party objected to the ap-

praisals performed by Skyline, defendant sent a letter to Supreme Court objecting to the appraisal performed by East Coast. Defendant was concerned that the East Coast appraisal was inaccurate and greatly undervalued the parcels. Defendant requested a conference between the parties and the court to "resolve" issues relating to the East Coast appraisal; no motion was made by either party for any relief.

On August 7, 2007, Supreme Court held a conference with the parties to discuss the appraisals. After the matter was discussed off the record, the court went on the record, stating:

"We came together sometime ago and the parties stipulated to an agreement to resolve this matter, and pursuant to the stipulation, the Court would find two appraisers who would do appraisals of both the Bronx and Brooklyn properties.

"The appraisals have been done, but at least one of the parties is unhappy with the result of the appraisal done by . . . East Coast Appraisals, and the Court will give the benefit of the doubt based on the arguments made, and I'll select another appraiser from Brooklyn to again appraise the property in both boroughs.

"I'm going to call the administrative judge in Brooklyn and get the names of two Brooklyn judges who handle cases where appraisals might be used and ask for each of them to give me the names of an appraiser, and I'll randomly select one of the appraisers to do another appraisal.

"The parties will be responsible for paying, again, for the cost of the appraisers. I want the parties to know, both parties, but in particular, defendants, and I say this because the plaintiff[ ] [is] willing to accept the average as is. The agreement in the stipulation is to accept an average of the appraisals.

"So I want to point out to defendants . . . that if after I seek another appraiser, if the amount of the appraisal comes out at or near what the East Coast appraiser came up with, then you'll be bound by that appraisal, everybody will be bound, but I can't continue to go over and over and over getting appraiser after appraiser after appraiser.

"I'll get one appraiser again and it will be the last time, and whatever the amount comes up with [sic], all parties will be bound by it, okay?

"Is there anything else?

"[Plaintiff's counsel]: No, your honor.

"[Defendant's counsel]: No, your honor."

Although, as the court noted, plaintiff was willing to accept the East Coast appraisal, it also is clear that plaintiff did not object

to the selection of a third appraiser. To the contrary, plaintiff acquiesced in defendant's request that another appraisal be performed.

Following the August 7 conference, the court requested that the third appraisal be performed by Jacob Gold Realty. The Jacob Gold Realty appraisal valued both the Bronx and Brooklyn parcels higher than the appraisals from Skyline and East Coast. Plaintiff viewed the Jacob Gold appraisal as unreasonably high, but sought no relief from the court with respect to it.

Without the prompting of a motion, Supreme Court determined the value of the parcels. The court noted that, based on the three appraisals, it had "three possible methods of determining the market value of each property. One option is to average out the three appraised market values of each property. The second option is to discard the lowest appraised market value for each property, as provided by East Coast . . . , and to then average out the two remaining appraised market values for each property as provided by Skyline . . . and Jacob Gold . . . The third option is to discard both the lowest appraised market values, as provided by East Coast . . . , and the highest appraised market values, as provided by Jacob Gold . . . , and thus to rely exclusively upon the middle appraised market values for each property, as provided by Skyline." The court determined that it would average the values of all three appraisals for both parcels. The court stated that "while defendant has qualms about the relatively low assessment market values provided by East Coast . . . viz-a-viz those provided by Skyline . . . , the Court, in good conscience, cannot summarily jettison East Coast's appraisals. Indeed, the appraised evaluations were supported by more than East Coast's bald expression of values and East Coast provided the supporting data as to the method by which it arrived at its conclusion and the factors which entered into its judgment. The preponderance of its comparable properties were located in immediate areas and were representative of the same residential market as the property in question, both in size and usage. Under the circumstances, East Coast's assessments are credible and entitled to be given probative weight equal to the other two appraisals of the Bronx and Brooklyn properties." The court did not discuss the terms of the stipulation of settlement that required the court to determine the value of the properties by averaging *two* appraisals, and did not explain how its decision to average the three appraisals was consonant with the terms of stipulation of settlement. Nor did the court explain why it believed that one of the

valuation methods was to discard the lowest and highest appraisals, a method that would entail no averaging. This appeal by defendant ensued.

Prior to oral argument on this appeal, defendant moved to vacate the stipulations of settlement—both defendant and the court that heard and decided that motion treated the court's August 7, 2007 on-the-record statements as a stipulation; plaintiff, however, asserts that the court gave directives to which the parties did not stipulate. After oral argument of the appeal, Supreme Court granted the motion to vacate. The court concluded that no binding stipulations existed, and stated that the parties were free to conduct disclosure and file a note of issue when the matter was ready for trial. Thus, although the order appears not to have expressly vacated the order on appeal determining the value of the properties, it implicitly does so (*see generally Banker v Banker*, 56 AD3d 1105, 1107 [2008]; *Savino v "ABC Corp."*, 44 AD3d 1026, 1027 [2007]; *Matter of Jefferson County Dept. of Social Servs. v Mark L.O.*, 12 AD3d 1037, 1037-1038 [2004], *lv denied* 4 NY3d 794 [2005]). Moreover, of course, the order on appeal depends entirely on the existence and validity of the stipulations.

Regardless of whether Supreme Court correctly vacated the stipulations that are the subject of this appeal, the stipulations have been vacated and this appeal is moot because the rights of the parties cannot be affected by a determination of this appeal (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]; *see Matter of Feustel v Rosenblum*, 6 NY3d 885, 886 [2006] ["Appeal taken as of right from the Appellate Division judgment . . . and motion for leave to appeal from said judgment . . . dismissed as moot upon the ground that the judgment of the Appellate Division has been vacated by a subsequent order of that Court"]; *Matter of Rodriguez v Johnson*, 45 AD3d 279 [2007], *lv denied* 10 NY3d 705 [2008] ["Petitioner's appeal is moot because Supreme Court vacated the judgment on appeal"]; *Fidata Trust Co. Mass. v Leahy Bus. Archives*, 187 AD2d 270, 271 [1992] ["The order on appeal was subsequently vacated and thus rendered moot"]; *see also Perez v Morse Diesel Intl., Inc.*, 10 AD3d 497 [2004]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5517:1, at 208 ["If the disposition of (a) motion (to reargue, renew or vacate an order) does substantially affect the original order . . . it may have some impact on the appeal. If it alters the order in such a way as to remove the grievance that accounts for the appeal, it should abate the appeal"]). Because the appeal has been rendered moot we cannot and do not pass on the issues pre-

sented (*see Hearst Corp.*, 50 NY2d at 713-714 ["It is a fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal. This principle, which forbids courts to pass on academic, hypothetical, moot, or otherwise abstract questions, is founded both in constitutional separation-of-powers doctrine, and in methodological strictures which inhere in the decisional process of a common-law judiciary" (citations omitted)]).

The dissent asserts that "by ruling that the intervening order 'implicitly' vacates the order on appeal, [we] thereby pass[ ] on a substantive issue" and "render[ ] an advisory opinion construing both the status of the order appealed from and the . . . effect of an order not even before us." As is obvious from our decision, we pass on no substantive issues relating to the rights of the parties. Equally as obvious, we are not "rendering an advisory opinion construing both the status of the order appealed from and the . . . effect of an order not even before us." Rather, we simply conclude that the order on appeal is moot (and, as discussed below, nonappealable) and therefore the appeal must be dismissed. Of course, we first conclude that the order vacating the stipulations implicitly vacates the order on appeal. But that conclusion merely reflects the exercise of our jurisdiction to determine our jurisdiction (*see United States v Mine Workers*, 330 US 258, 291 [1947]).

The dissent states that by moving to vacate the stipulations, defendants "unilaterally prevent[ed] this Court from deciding whether the motion court erred in [vacating] what appears to be a valid agreement between the parties." In the first place, however, defendants took no "unilateral" action. Defendants made a motion on notice to vacate the stipulations, a motion Supreme Court granted. Second, this Court is not precluded from determining whether the stipulations are valid. To the contrary, we may determine that precise issue should plaintiff perfect his appeal from the order vacating the stipulations.

The dissent posits that

"vacating the stipulation[s] does not invalidate the order on appeal, which is not dependent on the parties' agreement but rests on an independent statutory basis.

"The setting of a fair price under Business Corporation Law § 623 is a matter entrusted to Supreme Court's discretion, which encompasses the acceptance or rejection of expert opinions. Thus, Supreme Court's decision to regard all three appraisals as reasonable assessments of the value of the properties, based on

the value of comparable properties in the vicinity of similar size and usage, and to give probative weight to each was well within the exercise of judicial discretion. In short, the validity of the parties' agreement is immaterial to the court's power to determine the value of the subject properties under the Business Corporation Law" (citations omitted).

Neither of the parties cited (let alone discussed) Business Corporation Law § 623, and neither party argued that "the validity of the parties' agreement is immaterial to the court's power to determine the value of the subject properties." To the contrary, both parties regard the validity and interpretation of the "agreement," i.e., the January 29, 2007 stipulation, as essential to the determination of their rights. The dissent does not discuss how its reliance on Business Corporation Law § 623 is consistent with "orderly appellate procedure" or its recognition that "parties are normally permitted to chart their own procedural course before the courts."

The appeal should be dismissed for another reason—it is from a sua sponte order from which no appeal lies (*see Sholes v Meagher*, 100 NY2d 333 [2003]; *Person v Einhorn*, 44 AD3d 363 [2007]; *Unanue v Rennert*, 39 AD3d 289 [2007]; *Diaz v New York Mercantile Exch.*, 1 AD3d 242 [2003]). In *Sholes* the Court of Appeals addressed the issue of the appealability of sua sponte orders. There, an attorney was sanctioned by Supreme Court for engaging in frivolous conduct in the course of a personal injury case. From the bench the trial court gave the parties a briefing schedule, requiring the attorney to submit an affidavit explaining why she should not be sanctioned for her conduct and directing her adversary to submit an affidavit detailing his costs and expenditures at trial. After both sides submitted papers, the trial court ordered the attorney to pay her adversary approximately $14,000. The attorney appealed to the Second Department, which dismissed the appeal because the order imposing sanctions did not decide a motion made on notice (295 AD2d 593 [2002]).

The Court of Appeals granted leave and concluded that the Second Department had correctly dismissed the appeal. The Court of Appeals stated that, "[w]ith limited exceptions, an appeal may be taken to the Appellate Division as of right from an order deciding a motion made upon notice when—among other possibilities—the order affects a substantial right. There is, however, no right of appeal from an ex parte order, including an order entered sua sponte" (100 NY2d at 335 [citations omitted]). The Court also stated "[t]hat an order made sua sponte is not an order deciding a motion on notice is apparent from vari-

ous CPLR provisions, including the definition of motion (*see* CPLR 2211) and the provision for dismissal for failure to prosecute, which distinguishes between a 'court initiative' and a party's 'motion' (*see* CPLR 3216)" (*id.* at 335 n 2). While the trial court had created a procedure to ensure that the parties had an opportunity to be heard before the court acted, the Court stressed that "the submissions ordered sua sponte by the trial court were not made pursuant to a motion on notice as contemplated by CPLR 5701 (a) (2). While the procedure in this particular case may well have produced a record sufficient for appellate review, there is no guarantee that the same would be true in the next case. Moreover, the amount of notice will vary from case to case, and its sufficiency may often be open to debate. Adherence to the procedure specified by CPLR 5701 (a) uniformly provides for certainty, while at the same time affording the parties a right of review by the Appellate Division. We are therefore unwilling to overwrite that statute" (*id.* at 336).

As is evident from the briefs, the record and the attorneys' statements at oral argument, the order determining the value of the parcels was not the product of a motion made on notice. Rather, that order was issued sua sponte and therefore is not appealable as of right (*id.*; *Person, supra*; *Unanue, supra*; *Diaz, supra*).

Defendant's letter to the court requesting a telephone conference to resolve issues related to the East Coast appraisal was not a motion to value the properties. It is beyond cavil that a motion is a request for an order (CPLR 2211) and defendant's letter contained no request for an order. Thus, the letter plainly could not serve as a notice of motion. Additionally, and unsurprisingly since defendant was not seeking an order but rather a telephone conference, the letter did not specify a return date and was not accompanied by any supporting papers (CPLR 2214 [a] ["A notice of motion *shall* specify the time and place of the hearing on the motion, the supporting papers upon which the motion is based, the relief demanded and the grounds therefor" (emphasis added)]). Because the letter neither contained a request for an order nor complied with CPLR 2214, it could not have served as a notice of motion (*see Rosen v Rosen*, 38 AD2d 881 [1972]). The absence of a motion is not a technical defect that can be overlooked; under *Sholes* a motion is required to generate an order that is appealable as of right.

Neither of the parties has argued that this action should be treated as a summary proceeding under Business Corporation Law § 1008. Although defendant asserted a counterclaim in this action for judicial supervision of the winding up of the affairs of

SAR pursuant to Business Corporation Law § 1008, plaintiff asserted causes of action against defendant to recover damages for fraud, breach of fiduciary duty and under Business Corporation Law § 720, claims that need to be adjudicated in a plenary action, and both parties have litigated this matter as a plenary action, not a special proceeding. Nonetheless, despite the absence of a motion requesting the court to do so, the dissent would treat the action as a special proceeding and sanction Supreme Court's determination of the parties' substantive rights. Here, too, the dissent does not explain how its reliance on Business Corporation Law § 1008 is consistent with "orderly appellate procedure" or its recognition that "parties are normally permitted to chart their own procedural course before the courts."

We note that the dissent assumes erroneously that "both parties were afforded notice and opportunity to be heard on the use to be made of the disputed appraisal." To the contrary, the parties had no opportunity to make arguments or submit evidence regarding either the valuation of the properties or the validity of the stipulations before Supreme Court valued the properties. Thus, although we have the power to grant leave to appeal from an order that is not appealable as of right (CPLR 5701 [c]), we decline to do so.

Although Supreme Court's order vacating the stipulations is not before us and the parties have not addressed its validity, the dissent nonetheless writes that the order is "of highly questionable validity," and that there is a "distinct probability that the . . . order is a nullity." Thus, the dissent writes "[a]s to the merits of Justice Wright's order, merely because a stipulation incorporating the essential terms of the parties' agreement recites that it contemplates the execution of a more formal document does not thereby render the agreement unenforceable unless it expresses the parties' clear intent not to be bound until the contemplated formal document has been executed." Given these statements, we think it prudent to underscore that we express *no* opinion on the subject. The dissent assumes that (1) an appeal from the order vacating the stipulations will be perfected, (2) this Court will vacate the order and (3) vacatur of the order will revive the moot order that is now before us.* Even if all these assumptions were made, the order before us would still be a sua sponte order from which no appeal lies. Motion seeking leave to strike record denied. Concur—Nardelli, Sweeny, McGuire and DeGrasse, JJ.

---

* Although the dissent asserts that it is "confin[ing] [its] discussion to the grounds for dismissal propounded by the majority," it nonetheless goes on to address the validity of the order vacating the stipulations.

Tom, J.P., dissents in a memorandum as follows: Based on a postargument order of highly questionable validity, the majority purports to dismiss this appeal on the ground that it is moot. Disregarded is the distinct probability that the intervening order is a nullity because (1) it conflicts with the order appealed from, which remains extant, (2) it was rendered while the instant appeal, involving identical issues, was pending before this Court without any motion by defendants to withdraw their appeal and (3) there does not appear to have been any procedural basis for entertaining a motion affecting the order on appeal. As an additional basis for dismissal, the majority holds that defendants have sought review of a nonappealable order.

While I perceive no deficiency in the order appealed from and would be inclined to simply affirm it, extensive discourse on considerations of comity and orderly appellate procedure appropriately awaits plaintiff's appeal from the intervening order. Thus, I confine my discussion to the grounds for dismissal propounded by the majority. I observe only that the intervening order provides an insubstantial basis for depriving plaintiff-respondent of the resolution of this long-standing conflict provided by the order appealed from. Even assuming that the intervening order is ultimately found to be valid, issues raised by defendants' appeal remain to be resolved. Accordingly, I dissent and would hold this appeal in abeyance for consolidation with plaintiff's appeal from the intervening order.

This action involves the winding up of two corporations formed to hold title to two properties from which the individual parties conducted a medical practice. Defendant S.A.R. Bookkeeping and Billing Corporation is the owner of the premises known as 424 East 138th Street in Bronx County, and defendant 91 Graham Avenue Realty Corporation is the owner of 91 Graham Avenue in Kings County. Both corporations were dissolved for failure to pay franchise taxes.

Defendant Sequeira entered into a contract to transfer the Bronx property to defendant 424 East 138th Street LLC, prompting plaintiff to obtain an injunction barring its sale. Defendants thereupon brought a petition seeking dissolution of 91 Graham Avenue Realty Corporation under Business Corporation Law § 1008. Because plaintiff did not consent to the sale of the corporate asset, he has "the right to receive payment for his shares" by way of a Business Corporation Law § 623 proceeding (Business Corporation Law § 1005 [a] [3] [A]; *e.g. Matter of Cawley v SCM Corp.*, 72 NY2d 465, 470-471 [1988]). In the order on appeal, Supreme Court (Dianne T. Renwick, J.) held that a stipulation entered into by the parties, and subsequently mod-

ified by them, governs the valuation and ownership of the properties.* Although the parties had originally stipulated that the value would be determined by averaging two appraisals, when defendants objected to the outcome, the parties agreed that a third appraisal would be obtained. The court then used the average of all three appraisals to set the value of the properties and directed the parties to consummate the agreed-upon transfer of ownership.

Defendants brought this appeal contending, as they did before Supreme Court, that because the stipulation originally provided for the averaging of only two appraisals, the court erred in averaging all three appraisals. Thus, presented for this Court's review are whether the stipulation (as modified) is binding, whether the averaging of the three appraisals comports with the parties' agreement and, if not, whether the determination of the value of the subject properties was nevertheless a valid exercise of the powers conferred by Business Corporation Law § 1008.

While their appeal from the order was pending and in the absence of any application to withdraw it, defendants moved in Supreme Court to vacate the stipulation. Because Justice Renwick had been elevated to this Court, the matter was assigned to another justice (CPLR 2221 [a]). Notice of defendants' motion and the ensuing order was received by this Court approximately one month after the appeal was argued in the form of a letter from defendants' attorney, who informed us that "upon an application in the underlying action to the trial court after the instant appeal was filed, the trial court issued a decision and order vacating the two stipulations." The letter noted that plaintiff had filed a notice of appeal from that order.

The short form order sheet, enclosed with the letter, is dated several weeks after the appeal was argued and annotated "motion vacate order." The enclosed decision and order (Geoffrey D. Wright, J.) does not vacate the order on appeal, but instead provides that "the motion to set aside the failed stipulation is granted" on the ground that "there was an agreement to agree, rather than an agreement."

The majority's position that this order moots the instant appeal does not withstand scrutiny. As this Court has noted, "it is well settled that unless there is an infirmity of jurisdiction of the subject matter so as to render it void, an order or judgment of a court is binding on all persons subject to its mandate until

---

* Shortly after issuing the order, Justice Renwick was appointed to this Court.

vacated or set aside on appeal" (*Matter of Murray v Goord*, 298 AD2d 94, 97 [2002], *affd* 1 NY3d 29 [2003]). Justice Wright's order does not purport to vacate the order under review but merely sets aside what is characterized as "the failed stipulation." Meanwhile, the justices in the majority correctly state that because they deem the appeal to be moot, "we cannot and do not pass on the issues presented." They then abrogate this stricture by ruling that the intervening order "implicitly" vacates the order on appeal, thereby passing on a substantive issue they purport not to reach and rendering an advisory opinion construing both the status of the order appealed from and the scope and effect of an order not even before us. Moreover, merely vacating the stipulation does not invalidate the order on appeal, which is not dependent on the parties' agreement but rests on an independent statutory basis.

The setting of a fair price under Business Corporation Law § 623 is a matter entrusted to Supreme Court's discretion (*Matter of Cawley*, 72 NY2d at 470), which encompasses the acceptance or rejection of expert opinions (*Matter of American Premier Underwriters, Inc. v Abelow*, 54 AD3d 638 [2008]). Thus, Supreme Court's decision to regard all three appraisals as reasonable assessments of the value of the properties, based on the value of comparable properties in the vicinity of similar size and usage, and to give probative weight to each was well within the exercise of judicial discretion. In short, the validity of the parties' agreement is immaterial to the court's power to determine the value of the subject properties under the Business Corporation Law based on the evidence before it.

In any event, defendants lacked any procedural basis to seek vacatur of the order on appeal. A court's traditional power to amend its own order or judgment is circumscribed by statutory grounds (CPLR 5015 [a]; 5019 [a]) and equitable considerations (*see Matter of McKenna v County of Nassau, Off. of County Attorney*, 61 NY2d 739, 741-742 [1984]), which limit amendment to the correction of ministerial and clerical errors, not judicial errors (*see Mansfield State Bank v Cohn*, 88 AD2d 837, 837-838 [1982], *affd on other grounds* 58 NY2d 179 [1983]; *Tilley v Coykendall*, 69 App Div 92, 102 [1902], *affd* 172 NY 587 [1902]). While Supreme Court identified defendants' postargument application as a motion to vacate, none of the grounds enumerated in CPLR 5015 (a) are applicable. The obvious procedural basis for revisiting an order issued by the same court is CPLR 2221, denominated "Motion affecting prior order," which requires either a motion to reargue or a motion to renew (CPLR 2221 [d], [e]). However, there is no indication that defendants' applica-

tion was accompanied by any new evidence so as to support renewal (CPLR 2221 [e] [2]); nor is there any indication that it was timely brought so as to warrant reargument (CPLR 2221 [d] [3]). As to the merits of Justice Wright's order, merely because a stipulation incorporating the essential terms of the parties' agreement recites that it contemplates the execution of a more formal document does not thereby render the agreement unenforceable unless it expresses the parties' clear intent not to be bound until the contemplated formal document has been executed (*see Brause v Goldman*, 10 AD2d 328, 332 [1960], *affd* 9 NY2d 620 [1961]).

As a matter of appellate practice, defendants should not be permitted to unilaterally prevent this Court from deciding whether the motion court erred in enforcing what appears to be a valid agreement between the parties. Defendants' contention on the present appeal is that Justice Renwick's methodology for appraising the properties exceeded the parties' agreement. Thus, defendants' appellate position is that the stipulation between the parties is valid and enforceable. At some point during the pendency of the appeal, however, defendants assumed a contrary position by moving in Supreme Court to vacate the stipulation. In the absence of plaintiff's consent, this Court should not permit defendants, having chosen to proceed by way of appeal, to avoid an appellate disposition of the issues raised therein by resort to obtaining a subsequent order from Supreme Court and merely disregarding the pending appeal (*see Zion v New York Hosp.*, 183 AD2d 386, 388 [1992] [motion to withdraw, made before appeal was heard, denied]). Any other policy would be an open invitation to forum shopping.

As an additional ground for dismissal, the majority advances, sua sponte, the proposition that the order appealed from is not reviewable as of right (CPLR 5701 [a] [2]). It postulates that because Supreme Court entertained defendants' objections to the disputed third appraisal in response to their letter (a copy of which was sent to plaintiff), not as a result of a formal motion, no motion on notice was pending before the court, which thus issued "a sua sponte order from which no appeal lies" (citing *Sholes v Meagher*, 100 NY2d 333, 335 [2003]; *Person v Einhorn*, 44 AD3d 363 [2007]; *Unanue v Rennert*, 39 AD3d 289 [2007]; *Diaz v New York Mercantile Exch.*, 1 AD3d 242 [2003]).

The order appealed from is not one from which appeal is barred on the ground that it was entered either sua sponte, as the majority contends, or ex parte, to which the same proscription applies (CPLR 5701 [a]; *see e.g. Household Fin. Realty Corp. of N.Y. v Winn*, 19 AD3d 545 [2005]). "Sua sponte" means

"on its own motion; without prompting" (Garner, A Dictionary of Modern Legal Usage 838 [2d ed 1995]). The order on appeal, however, was the immediate result of defendants' request (on letter notice to plaintiff) for a conference to resolve issues that, they maintained, were raised by the report submitted by East Coast Appraisals. The disputed appraisal report was discussed by the parties at length at a conference held on August 7, 2007, resulting in the parties' agreement, on the record, that a third appraisal report would be obtained.

Likewise, the circumstances under which the order was issued do not comport with the meaning of "ex parte": "Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested" (Black's Law Dictionary 616 [8th ed 2004]). Since both parties were afforded notice and opportunity to be heard on the use to be made of the disputed appraisal, the order does not raise any question of appealability, either due to the lack of opportunity to be heard or the inadequacy of the record (*see Unanue*, 39 AD3d at 290; *Diaz*, 1 AD3d at 243).

The circumstances under which the order on appeal was issued are distinguishable from those of the *Sholes* case, on which the majority relies. There, the court, after declaring a mistrial and without any request from opposing counsel, imposed sanctions against an attorney for engaging in frivolous conduct. The trial court merely directed the attorney to submit an affidavit as to why she should not be sanctioned and directed opposing counsel to submit an affidavit of costs incurred at trial. It thereupon issued an award of $13,558.44 against the offending attorney and her law firm, both of which appealed from the ruling.

As the Court of Appeals held, "There is . . . no right of appeal from an ex parte order, including an order entered sua sponte" (*Sholes*, 100 NY2d at 335). This rule is designed to ensure that the parties are afforded an opportunity to be heard and that appellate review will be conducted upon a suitable record (*id.*). What should not be overlooked, however, is that the nature of the hearing required to be conducted is very much dependent on the context.

In contrast to the nonparties to the action before the Court in *Sholes*, the litigants at bar are parties to a special proceeding pursuant to Business Corporation Law § 1008 (*see Sunwest Enters. v Tilani Enters.*, 282 AD2d 236, 239 [2001]) subject to "summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised" (CPLR 409 [b]). The hearing contemplated "is equivalent to the

hearing of a motion for summary judgment and makes a formal motion for same unnecessary" (*Matter of Battaglia v Schuler*, 60 AD2d 759, 759-760 [1977]). The court is vested with the discretion to "make all such orders as it may deem proper in all matters in connection with the dissolution or winding up of the affairs of the corporation" (Business Corporation Law § 1008 [a]). With exceptions not pertinent herein, "[o]rders under this section may be entered ex parte . . . Notice shall be given to such other persons interested, and in such manner, as the court may deem proper, of any hearings and of the entry of any orders on such matters as the court shall deem proper" (Business Corporation Law § 1008 [b]).

The majority's assertion that this dispute must be resolved in a plenary action misapprehends the substance and procedural history of the case. When defendant Sequeira attempted to sell the Bronx property, plaintiff commenced this action, naming Sequeira and the subject corporations as defendants, and obtained a preliminary injunction barring the transfer. The complaint alleges, inter alia, violation of plaintiff's right, as a 50% owner of the corporations, to access corporate books and records (Business Corporation Law § 624) and seeks relief from the unlawful conveyance of corporate property, including the Bronx property and bank accounts maintained by the corporations (Business Corporation Law § 720). Sequeira thereupon brought a petition seeking dissolution of 91 Graham Avenue Corporation under Business Corporation Law § 1008 in Supreme Court, Kings County, which proceeding was consolidated with this action a few months later. Thereafter, defendants filed both an amended answer and an amended petition in support of their claims for declaratory and related relief under Business Corporation Law § 1008.

The proceedings culminated in the disputed stipulation, in which the parties agreed to a global settlement to wind up the affairs of the two corporations and dispose of their respective properties. The issue raised by defendants on appeal is the propriety of Supreme Court's use of the various appraisals of the properties to determine their value. The majority's position notwithstanding, article 10 of the Business Corporation Law provides the exclusive means of judicially winding up the affairs of a dissolved corporation, and the supervisory authority of Supreme Court under Business Corporation Law § 1008 has been expressly and necessarily invoked. Business Corporation Law § 1008 (b) provides that "[o]rders under this section may be entered ex parte." Because the court is vested with broad discretion to determine the value of assets and to enter orders

ex parte pursuant to Business Corporation Law § 1008, neither the lack of agreement as to the methodology of valuation nor the absence of a formal notice of motion affect the validity of the order on appeal.

The majority's ruling that the subject order is not appealable because it was purportedly entered "sua sponte" is inconsistent with the Business Corporation Law, which explicitly grants Supreme Court authority to enter orders ex parte and to give the parties notice of any hearings in such manner as the court deems appropriate (Business Corporation Law § 1008 [b]). The considerable discretion conferred upon a court conducting a special proceeding to supervise the dissolution of a corporation renders untenable the majority's suggestion that any order must be predicated upon a formal notice of motion. Moreover, the provision for ex parte entry cannot be presumed to reflect a legislative intent to exempt such orders from appellate review. The effect of the majority's ruling is to deprive any party aggrieved by an order entered in a proceeding under Business Corporation Law article 10 of the right to appeal unless the order happens to have been entered as a result of a motion made on notice, a procedural requirement not imposed by Business Corporation Law article 10 or by the CPLR for a hearing held in the course of a special proceeding (CPLR 409).

Even ignoring the considerable discretion conferred upon a court conducting a special proceeding to supervise the dissolution of a corporation, parties are normally permitted to chart their own procedural course before the courts (see Stevenson v News Syndicate Co., 302 NY 81, 87 [1950]; Katz v Robinson Silverman Pearce Aronsohn & Berman, 277 AD2d 70, 73 [2000]), and the courts are vested with discretion to disregard defects in form (CPLR 2101 [f]). While the correspondence from defendants' counsel to the court did not precisely conform to the prescribed method for making a motion (CPLR 2212 [a]), it had the same effect of bringing on a hearing before the court, at which the parties were afforded the opportunity to be heard on the merits. Significantly, no party was deprived of due process (cf. Matter of Gonia v Gonia, 231 AD2d 718 [1996]; Rosen v Rosen, 38 AD2d 881 [1972]). Plaintiff did not reject the letter notice or raise any objection to the procedural defects in defendants' application perceived by the majority. Supreme Court was within the exercise of its discretion to entertain defendants' letter application, disregarding any defects in form (CPLR 2101 [f]). The resulting order determined defendants' application, disposed of the issues raised in the proceeding and was duly entered (CPLR 2220), thereby comprising an appeal-

able paper (CPLR 5512 [a]) reviewable by this Court (CPLR 5701 [a] [2] [iv]).

In view of the outstanding pivotal issues, it defies logic to dismiss this appeal as moot. Plaintiff has filed a notice of appeal from the intervening order of Justice Wright. If the instant appeal is dismissed, should the order of Justice Wright subsequently be reversed and Justice Renwick's order reinstated, the parties will have to negotiate the appeals process all over again on the same issues presently before us—an unnecessarily timely and expensive ordeal. Because the issues involved in this appeal and the forthcoming appeal from the intervening order are inextricably intertwined and a decision in one may obviate the other, they should be heard together.

Accordingly, this matter should be held in abeyance for consolidation with the appeal from Justice Wright's order.