People v Branton (2025 NY Slip Op 03226)

People v Branton

2025 NY Slip Op 03226

Decided on May 29, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 29, 2025

113196
[*1]The People of the State of New York, Respondent,
v
Rodney Branton, Appellant.

Calendar Date:March 28, 2025

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Stephen W. Herrick, Public Defender, Albany (James A. Bartosik Jr. of counsel), for appellant.
Peter H. Willis, Special Prosecutor, Schenectady, for respondent.

Aarons, J.P.
Appeal from a judgment of the Supreme Court (Michael Dwyer, J.), rendered August 31, 2021 in Albany County, upon a verdict convicting defendant of the crime of offering a false instrument for filing in the second degree.
The Department of Corrections and Community Supervision (hereinafter DOCCS) was notified that liens had been filed against the Acting Commissioner of Corrections and Community Supervision and two members of the judiciary (hereinafter collectively referred to as the victims). Following an investigation, on April 12, 2019, defendant was charged, by felony complaint, with offering a false instrument for filing in the first degree and, in November 2019, was indicted on that same charge. After the matter was moved to Supreme Court, defendant was arraigned on February 20, 2020, at which time the People filed their CPL 710.30 notice, certificate of compliance (hereinafter COC) and statement of readiness and disclosure of automatic discovery items (see CPL 245.20).
Defendant thereafter engaged in motion practice that included, among other things, unsuccessful applications to dismiss the indictment on speedy trial grounds and for suppression and/or preclusion of statements made by him to a DOCCS investigator. After trial, defendant was found guilty of the lesser included offense of offering a false instrument for filing in the second degree, and thereafter he was sentenced to a term of nine months in jail. Defendant appeals. We affirm.
Defendant forfeited his challenge to the legal sufficiency of the evidence supporting his conviction of offering a false instrument for filing in the second degree by affirmatively requesting that the jury be charged with that lesser included offense (see People v Colbert, 60 AD3d 1209, 1210 [3d Dept 2009]; People v Kearney, 25 AD3d 622, 623 [2d Dept 2006], lv denied 6 NY3d 849 [2006]; People v Legacy, 4 AD2d 453, 455 [3d Dept 1957]). Defendant nevertheless argues that the verdict is against the weight of the evidence and, therefore, "we necessarily consider whether all of the elements of the charged crime[ ] were proven beyond a reasonable doubt" (People v Mazzeo, 202 AD3d 1279, 1280-1281 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1072 [2022]). To secure a conviction for offering a false instrument for filing in the second degree, the People had to prove that defendant, "knowing that a written instrument contains a false statement or false information, . . . offer[ed] or present[ed] it to a public office or public servant with the knowledge or belief that it [would] be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant" (Penal Law § 175.30).
At trial, the DOCCS investigator testified that, upon being notified of a letter received by the Acting Commissioner, he accessed records from the Department of State and found liens placed on the Acting Commissioner and the members of the judiciary with defendant [*2]listed as the creditor. The investigator testified that he could find no financial obligation justifying the underlying liens, and each of the victims testified at trial confirming that they had no business or personal transactions with defendant. The investigator also testified that during his conversation with defendant, defendant acknowledged that he had filed the liens at issue for the purpose of putting the victims on notice that they had no authority over him and had no right to have previously incarcerated him because he is a sovereign citizen. The jury could rely on that statement and the victims' testimony to infer that defendant knew the lien documents that he filed asserted falsely that he was the victims' creditor (cf. People v Bailey, 13 NY3d 67, 71 [2009]; People v Bel Air Equip. Corp., 39 NY2d 48, 55 [1976]; People v O'Neal, 153 AD3d 1281, 1284 [2d Dept 2017]; Mahoney v State of New York, 147 AD3d 1289, 1293 [3d Dept 2017], lv denied 30 NY3d 906 [2017]). In view of the evidence of defendant's guilt, we conclude that a different verdict would have been unreasonable and, accordingly, find that the verdict is amply supported by the weight of the evidence (see CPL 470.15 [5]; People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant next argues that the People did not exercise due diligence or make reasonable efforts in ascertaining the existence of any disciplinary records for the DOCCS investigator listed as a witness at trial prior to filing their COC and, having failed to comply with their statutory disclosure obligation, the COC is invalid and dismissal of the indictment on speedy trial grounds is warranted (see CPL 30.30). We disagree. Although the People are under an obligation to disclose those materials that "relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to . . . [a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k] [iv]; see CPL 245.20 [2]; People v Contompasis, 236 AD3d 138, ___, 227 NYS3d 755, 762-763 [3d Dept 2025]), DOCCS is not a police or law enforcement agency for discovery purposes (see People v Kelly, 88 NY2d 248, 253 [1996]; People v Walker, 232 AD3d 1214, 1217 [4th Dept 2024], lv denied 42 NY3d 1082 [2025]). As such, the disciplinary records at issue are beyond the constructive possession of the People and, therefore, outside the scope of disclosure required by CPL 245.20 (1) (k) (iv) (see People v Kelly, 88 NY3d at 253; People v Walker, 232 AD3d at 1217; People v Jenne, 224 AD3d 953, 957 [3d Dept 2024], lv denied 42 NY3d 927 [2024]). Consequently, an analysis of the due diligence standard is not warranted (see People v Kelly, 88 NY2d at 253; People v Walker, 232 AD3d at 1217; see [*3]generally People v Bay, 41 NY3d 200, 212-213 [2023]).
Defendant's related speedy trial violation claim, asserting that the People filed their COC and certificate of readiness beyond the requisite six-month statutory period set forth in CPL 30.30 (1) (a), is also without merit. "Whether the People have complied with their statutory obligation to declare their readiness for a felony trial within six months of the commencement of a criminal action is determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion" (People v Scaringe, 137 AD3d 1409, 1410 [3d Dept 2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 936 [2016]; see People v Price, 14 NY3d 61, 63-64 [2010]; People v Friday, 160 AD3d 1052, 1052-1053 [3d Dept 2018]). The statutory speedy trial period began to run on August 12, 2019 — the date of the filing of the felony complaint — and thus expired six months later on February 12, 2020, for a total of 184 days. However, the People did not file their COC and declare readiness for trial until February 20, 2020 — 192 days after the speedy trial clock began to run — thereby requiring the People to demonstrate that specific periods of prereadiness delay should be excluded from the calculation (see People v McCarty, 221 AD3d 1360, 1363 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; People v Catalan, 204 AD3d 1240, 1241 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]).
When defendant appeared for his first scheduled arraignment on January 6, 2020, a discussion arose regarding a potential conflict regarding the assigned judge's spouse having previously been employed by DOCCS. Defendant declined to waive any conflict and requested that his case be reassigned. At his next arraignment appearance on January 15, 2020, the second assigned judge disclosed his involvement in a case in 2005 with defendant. Based on this disclosure, defendant again refused to waive any potential conflict and requested the reassignment to a different judge. Ultimately, the matter was reassigned, defendant was arraigned on the indictment on February 20, 2020, and the People's COC and statement of readiness were filed that same day. The 45-day period between January 6, 2020 and February 20, 2020 was occasioned by defendant's two requests for new judges and the resulting administrative reassignments, which circumstances were beyond the People's control. Exclusion of that 45-day period reduces the People's unexcused prereadiness delay to 147 days, which is within the six-month statutory speedy trial requirements (see CPL 30.30 [4] [a], [b], [g]; People v Kopciowski, 68 NY2d 615, 616-617 [1986]; People v Abdullah, 133 AD3d 925, 926 [3d Dept 2015], lv denied 27 [*4]NY3d 990 [2016]).
Next, we reject defendant's assertion that Supreme Court erred in failing to suppress his statements to the DOCCS investigator. "The safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation, and the standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (People v Robbins, 236 AD3d 1097, 1097-1098 [3d Dept 2025] [internal quotation marks and citations omitted]). Factors to be taken into account in determining whether a defendant is subject to custodial interrogation "include the location, length and atmosphere of the questioning, whether police significantly restricted the defendant's freedom of action, the degree of the defendant's cooperation, and whether the questioning was accusatory or investigatory" (People v Davis, 196 AD3d 918, 918-919 [3d Dept 2021] [internal quotation marks and citations omitted]).
The suppression hearing consisted solely of testimony from the DOCCS investigator, who stated that, after confirming the existence of the liens, he went to defendant's residence accompanied by defendant's parole officer, where they spoke with defendant in his bedroom. The investigator testified that defendant appeared to be expecting them and stated that he was open to discussing the liens, which liens he admitted filing against the three victims. The investigator testified that, during the conversation, defendant moved freely about the bedroom, discussed his status as a sovereign citizen and voluntarily gave the investigator paperwork regarding the liens, allowing the investigator to take the paperwork with him to make copies. The investigator testified that at no time during the approximately 15-minute interaction was defendant handcuffed nor was his movement in any way restricted. Based on the foregoing, Supreme Court correctly determined that the conversation with the DOCCS investigator did not stem from a custodial interrogation requiring Miranda warnings, and that the statements were admissible (see People v Ribbons, 236 AD3d at 1098; People v Davis, 196 AD3d at 918-919; People v Kenyon, 108 AD3d 933, 935 [3d Dept 2013], lv denied 21 NY3d 1075 [2013]).
Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.