People v Rivera (2025 NY Slip Op 50877(U))

[*1]

People v Rivera

2025 NY Slip Op 50877(U)

Decided on May 29, 2025

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 29, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Felix Rivera, Defendant.

Docket No. CR-024656-24BX

For the Defendant:
Danielle Altchiler (Bronx Defenders)
For the People:
ADA Sasha Abbott

David L. Goodwin, J.

Eighty-one days into this misdemeanor drugged-driving case, the People knew they were still missing discoverable material, including the activity logs of three of the four officers who responded to the scene. After reaching out to the NYPD's discovery liaison early in the proceedings, the People followed up once on the 75th day and again on the 81st. The People then declared ready two hours after the final attempt at outreach, listing the relevant material as "unavailable" on their certificate of compliance ("COC"), and taking no further action until being prompted by defense counsel about a month later. Eventual post-readiness disclosures also included some altogether new material, such as the body-worn camera of a fifth officer, who had (among other things) obtained the defendant's consent for a hospital blood-draw.
The main question is whether the initial COC was the product of reasonable diligence. The answer, on these facts, is no. Accordingly, the branch of defendant Felix Rivera's motion seeking dismissal on speedy trial grounds is GRANTED and the accusatory instrument is DISMISSED.
I. Background
Accusatory Instrument and Charges
Misdemeanor notwithstanding, the allegations of this case are troubling. Defendant Felix Rivera allegedly caused a multi-car accident—thankfully leading to no serious injuries—while driving under the influence.
Four officers responded to the scene: Officers Ferrara, Vignali, Lora, and Buchanan. According to the superseding information, which charged a single count of driving while ability impaired by drugs (V.T.L. § 1194(4)), Officer Buchanan perceived Rivera to be "incoherent," drifting in and out between statements. Superseding Information at 2. After Officer Buchanan administered Narcan, Rivera was transported to a nearby hospital, where he allegedly admitted [*2]to snorting heroin earlier in the day and consented to a blood draw. On November 1, the People obtained a search warrant to obtain the blood that had been drawn.
Commencement through COC/Readiness
The initial complaint was filed on October 6, 2024, and the case was arraigned the same day. The notices and other filings accompanying the initial complaint identified Officer Buchanan as the arresting officer and recorder of Rivera's various statements.
Nine days later, on October 15, the People reached out to their NYPD discovery liaison. In an email, the People explained they were missing "several documents that must be turned over to the defense"—among them, the activity logs for Officers Ferrara, Vignali, and Lora, as well as photos, the prisoner pen holding roster, and a variety of other material. People's Resp., Ex. 8. The People appear to have then re-sent the same email the morning of October 16. See id., Ex. 10.
Despite not receiving the requested material, the People did not follow up again for over two months. Then, on Friday, December 20, at 5:29 p.m., the People again emailed the liaison to request the activity logs and possibly the other material; the full email is not reproduced in the record. See id., Ex. 12. Apparently receiving no response, the People followed up again on Thursday, December 26 at 1:52 p.m. See id.
A little less than two hours after that, at 3:47 p.m., the People declared ready by filing their COC, statement of readiness, and automatic disclosure form via EDDS.
The COC reflected extensive disclosures, including the 911 call materials, a body-camera checklist, and the activity log of Officer Buchanan. COC § 4(b). Officer Buchanan's was the only activity log explicitly disclosed in this batch of discovery. This batch of discovery apparently included eight police body cameras. See People's Resp. at 11.
However, the COC also listed nine items as "unavailable" under C.P.L. § 245.50:[FN1]
(1) Officer Ferrara's activity log, (2) Officer Vignali's activity log, (3) Officer Lora's activity log, (4) a prisoner pedigree card, (5) a prisoner pen holding roster, (6) a roll call, (7) NYPD property clerk invoices, (8) a chain of custody report for vouchers, and (9) the hospital receipt for the blood vials. COC § 5(a). For each, the COC recited substantially the same record: the People had made requests on December 20 and December 26, were not yet in receipt, and would turn them over later. Id.
The accompanying automatic disclosure form listed Officers Ferrara, Vignali, Lora, and Buchanan as the only four law-enforcement personnel who were relevant to the case. Ferrara and Buchanan were specifically denominated as possible witnesses at trial. See ADF § d.
Notice of Missing Discovery; Post-Readiness Efforts and Court Appearances
On January 16, 2025, the defense sent a notice of missing discovery to the People. In addition to inquiring about the People's efforts to obtain the nine "unavailable" items, the defense identified several additional items that appeared to be missing, including contact information for civilian witnesses and photos taken at the scene.
The defense also requested information associated with a previously unmentioned fifth officer, Officer Ademaj, who had apparently been involved in the blood draw (and Rivera's alleged consent to that draw) at the hospital, but who had not been mentioned in the COC or automatic disclosure form. Specifically, defense counsel requested Officer Ademaj's work affiliation and any existing body-cam footage. See Defense's Mot., Ex. B.
Prompted by the letter from defense counsel, the People followed up on their earlier email chain for the first time since declaring ready by sending an after-hours email on January 16.[FN2]
 After receiving either no response or a possible email bounce back—it is unclear which—the People followed up again on January 24.
Meanwhile, at an appearance on January 22, the court acknowledged the People's COC and readiness materials, observing that defense counsel had already submitted objections to the COC. The case was adjourned to January 30 for a discovery conference, with defense counsel directed to submit a discovery dispute letter by the day before.
Before the next appearance, the People disclosed additional material to the defense. First, on January 24, the People disclosed OCME materials and other documents, which they described as "previously unavailable" despite the exercise of "diligent, good faith efforts." People's Resp., Ex. 4 § 4(a)(i). Second, on January 29, the People made an additional set of disclosures, which included the missing activity logs for Officers Ferrara, Lora, and Vignali, as well as the prisoner pedigree card and a police accident report. According to the second supplemental COC, the People had finally obtained this material between January 24 and January 26, after apparently requesting that Officer Buchanan personally come to the next court appearance to deliver the outstanding discovery. Id., Ex. 5 § 4(a).
On January 30, defense counsel requested additional time to review the People's disclosures. The matter was adjourned to February 26 for a discovery conference.
A third additional disclosure followed on February 5, with the People providing Officer Ademaj's body cam, which they had first requested on January 24 and finally obtained on February 3. Id., Ex. 7 § 4(a); see also id., Ex. 7 at 4 (pdf pag.) (reflecting initial email to Officer Ademaj on January 24).
After a discovery conference on February 26, the Court set a motion schedule.
II. Motion to Dismiss
Rivera's Motion
In one of the branches of his counseled omnibus motion, Rivera now seeks to deem the People's COC invalid and dismiss the accusatory instrument pursuant to C.P.L. § 30.30, contending that the People failed to discharge their discovery obligations in a diligent manner within the 90 days permitted by statute.
In seeking dismissal, Rivera challenges multiple alleged discovery failures.[FN3]
Among them, he contends that the People filed their COC despite knowing that discoverable material in the possession of the NYPD, such as the activity logs, remained outstanding,. Rivera argues that activity logs of three of the four officers who responded to the scene—one of whom was designated as a potential prosecution witness at trial—are core discovery items, similar to those that led to dismissal on § 30.30 grounds in People v. Rafael Santos, 79 Misc 3d 1233(A), 2023 NY Slip Op. 50778(U) (N.Y.C. Crim. Ct., Bronx Co. 2023) (Ortner, J.). He disputes that these materials were appropriately classified as "unavailable" in the People's COC, because they were not lost, destroyed, or otherwise beyond the People's reach; rather, the People had simply failed to exercise reasonable diligence to timely obtain the items.
Rivera also points to the belated disclosure of OCME reports from the blood draw and the body cam of Officer Ademaj as requiring invalidation of the COC. He describes Officer Ademaj as a "key member of law enforcement" whose role should otherwise have been apparent from the People's earlier disclosures. Defense's Mot. at 26—27.
The People's Response
In their response to the defense motion, the People contend that the validity of their initial COC notwithstanding, the entire period between their declaration of readiness on December 26 and the following court date on January 22, as well as through the next appearance on January 30, must be excluded from the § 30.30 calculation. In the People's view, their COC was "under consideration by the court" during that time, and "all time after filing of a COC up until the court's decision is excludable" under C.P.L. § 30.30(4)(a). People's Resp. at 17. For this proposition, the People rely on the March 2021 decision in People v. Wingate, 2020BX000967.
Relatedly, the People argue that the period between court appearances on January 22 and January 30 is also excludable as an adjournment for motions practice, as it is "the People's position that joint letters are motions" under C.P.L. § 30.30(4)(a). People's Resp. at 17. Relying on People v. Marin, 74 Misc 3d 1037 (N.Y.C. Crim. Ct., Bronx Co. 2022) (Zimmerman, J.), the People argue that both this period, and the one between January 30 and February 26, are also excludable as an adjournment for a discovery conference. People's Resp. at 17, 20.
The People also argue that Rivera did not timely file his motion, but instead was "l[ying] in wait" for the speedy trial clock to run by "using [the discovery timeline] as a sword and not a shield." People's Resp. at 18—19. They rely on People v. Barralaga, 73 Misc 3d 510 (N.Y.C. Crim. Ct., NY Co. 2021) (McDonnell, J.), for the proposition that a failure to timely notify the People of discovery deficiencies should toll the speedy trial clock. People's Resp. at 19.
The People otherwise defend their COC as the product of good faith and due diligence. They emphasize shared "substantial and crucial discovery prior to certifying" and describing the "challenged discovery" as de minimis. People's Resp. at 9.
Regarding one set of belatedly provided discovery—including the officers' activity logs, a police accident report, and other material—the People explain that they made "four separate attempts to acquire these missing documents," to no avail, as well as the two post-readiness [*3]attempts on January 16 and January 24. Id. at 10—11.[FN4]
 Their "last resort" was to direct Officer Buchanan to appear in-person, which eventually yielded the missing documents. Id.
The People emphasize that they did not deny the existence of this material or fail to take steps to ascertain it, pointing to the fact that they reached out again after being prompted by the January 16 discovery inquiry by the defense. See id. at 12. And the outstanding discovery was dwarfed by the volume of material that was timely provided, which included the 911 calls, eight body cameras, and breath-calibration records. See id. at 11.
The People also defend their efforts regarding OCME materials, hospital receipts, names of EMT personnel, photos taken at the scene, a civilian witness list, and Officer Ademaj's body camera. Regarding the OCME materials, the People attribute the delay to a testing queue, and assert that the OCME is not within their custody and control. Regarding Officer Ademaj's body camera, the People assert (as they did at the discovery conference)[FN5]
that Officer Ademaj did not "tag" his camera to the arrest number until February 3, meaning the People did not realize it existed until Officer Ademaj himself confirmed otherwise in early February. People's Resp. at 14.
Rivera's Reply
In a short reply, and among other arguments, Rivera attacks the adequacy of the People's attempts to obtain the "unavailable" material before declaring ready, arguing that the post-readiness attempts to secure the material should largely be discounted and that the record is devoid of any attempts at follow-up between October 16 and December 20. Other material, such as the police accident report and Officer Ademaj's body camera, was not requested at all until after the People declared ready.
Rivera otherwise disputes that joint discovery letters are motions, that adjournments for discovery conferences are excludable when the People have failed to file a valid COC, and that he was lying in wait by deferring his objections to the People's COC. He observes that his initial objections were filed only 21 days after the People's COC.
III. Legal Standard
When the highest charge is a misdemeanor punishable by a sentence of imprisonment of more than three months, the People are required to be ready for trial within 90 days from the commencement of the criminal action. See C.P.L. § 30.30(1)(b). The People cannot declare ready for trial, however, unless they have also complied in good faith with their disclosure obligations under New York's revised discovery laws. See id. § 30.30(5).
Under the current discovery law,[FN6]
a COC is valid if it is the product of due diligence. People v. Bay, 41 NY3d 200, 211 (2023). Factors relevant to diligence include the People's efforts to comply with their obligations, the volume of discovery provided, the complexity of the case, and the People's response to objections from the defense. Id. at 212.
The People bear the burden of demonstrating that they exercised due diligence. Id. at 213. It is also their burden to show the application of statutory exclusions for otherwise-chargeable time, People v. Labate, 42 NY3d 184, 190 (2024), which the defense may then address in reply, People v. Allard, 28 NY3d 41, 46-47 (2016).
IV. Discussion
Some COC disputes are technical, focusing on the discoverability on esoteric documents or the impact of the body camera of the fifteenth officer on the scene. For better or worse, this one is anything but. There is no disagreement that many of the challenged materials—such as the activity logs of three of the four officers and Officer Ademaj's body camera—were discoverable. The People also do not disagree that their disclosures were not made within 90 days. The only real issue is whether the People's efforts amounted to reasonable diligence.
As explained below, they did not. Despite knowing that core discoverable materials were outstanding, the People made minimal efforts—three emails, one sent shortly after the case began, the second sent after 5:00 p.m. the Friday before Christmas, the third sent the day after Christmas—to obtain them before declaring ready mere hours after sending the third email. After declaring ready, and despite the fact that nine days remained on the § 30.30 clock, the People halted all outreach until prompted by defense counsel in mid-January. While the NYPD discovery liaison appears to bear some of the fault for the delayed disclosure, the People cannot rely on their above-and-beyond late January efforts to obtain core discoverable materials after having let the clock run—and then some—before undertaking those efforts. And assuming without deciding that the undisclosed core material would not be itself sufficient to warrant invalidating the COC, the belated disclosure of yet more core material would require a finding that the People did not demonstrate due diligence before declaring ready.
a. The People have not met their burden to show that any relevant § 30.30 exclusions apply here.
The People argue, in effect, that the potential invalidity of their COC should not matter, because all time since the filing of their COC is excludable and should not count against them. The People's position is without merit.
First, the People provide effectively no support [FN7]
for their contention that the period between the filing of a COC and the next court date is automatically excludable under C.P.L. § 30.30(4)(a), which permits exclusion of a "reasonable period of delay resulting from" pre-trial motions and "other proceedings concerning the defendant," as well as the time that "such matters are under consideration by the court." But a COC is not a motion. And, as Rivera points out, adopting the People's position would effectively allow the People to stop the speedy trial § 30.30 clock by filing any COC, regardless of its validity. That is not the law, at least as currently applied.
Furthermore, an off-calendar COC is not typically "considered" until the court appearance after it has been filed. In fact, in this County, no individual judge is likely aware that a COC has been filed until the following court date. Thus, unlike a motion, which is "under [*4]consideration by the court" when it is fully briefed and pending decision, see People v. Shannon, 143 AD2d 572, 572—73 (1st Dept. 1988)—that is, when it is actually or constructively before a judge—a COC is not under assessment until the next appearance at the earliest. There is no "decision" to be "rendered," People's Resp. at 17, until that time.
Subsection (5) of C.P.L. § 30.30 also undermines the People's position. Under that subsection, a court is required to make an on-the-record inquiry into the People's actual readiness for trial. Because the People's readiness is tethered to the validity of their COC, see C.P.L. § 30.30(5), the statute itself supports that any "consideration" of a COC will ordinarily not take place until the next court appearance.
Thus, and without foreclosing the possibility that the period between the filing of a COC and the next date could be excludable in whole or in part on some ground,[FN8]
 the People have not met their burden here of showing entitlement to an exclusion.
Nor have the People adequately supported their contention that the period between January 22 and January 30 should be excluded because the direction to prepare a joint discovery letter was akin to motions practice, and thus excludable under C.P.L. § 30.30(4)(a). While it may be the People's "position" that "joint letters are motions,"[FN9]
People's Resp. at 17, they do not provide any authority in support, and there is plenty of authority to the contrary. A motion is "[a] written or oral application requesting a court to make a specified ruling or order." Motion, Black's Law Dictionary (12th ed. 2024); see also C.P.L.R. § 2211 ("A motion is an application for an order."). A joint letter prepared to assist the court at a discovery conference, while undeniably helpful, is not itself a request for an order. Cf. Reyes v. Sequeira, 64 AD3d 500, 508 (1st Dept. 2009) ("It is beyond cavil that a motion is a request for an order . . . and defendant's letter contained no request for an order."). Thus, whatever a joint letter may be, it is not a motion without a request for court intervention.[FN10]

The People also do not point to authority for their position that all adjournments for discovery conferences are excludable. The sole decision on which they rely, People v. Marin, involved an adjournment after a valid COC and statement of readiness, not an adjournment [*5]where the validity of the COC was still in question. See Marin, 74 Misc 3d at 1044. And while adjournments when the defense needs more time to review discovery may yield excludable time, the defense was ready as of January 22, having already objected on January 16.
Finally, the People provide no support for their assertion that the defense somehow weaponized the COC and readiness requirements in this particular case. The defense both noticed its discovery objections less than a month after the People filed their COC and declared ready and also substantially complied with the motion schedule set by the Court—set, it should be noted, without any objection by the People.
As with Marin above, the People's reliance on People v. Barralaga is misplaced. In Barralaga, the defense waited until April 16, 2021, to lodge objections to the People's February 5, 2021 COC. See Barralaga, 73 Misc 3d at 513. The Barralaga court determined that only 21 days of delay were reasonable, and charged only that time against the People. See id. at 521. Even if Barralaga were to apply, the defense here filed its objections precisely on the 21st day—well within Barralaga's safe harbor.
Accordingly, the People's procedural defenses lack merit. Thus, if the COC were deemed invalid, their § 30.30 time would have run before the clock stopped attempt, requiring dismissal of this case.
b. The People have not shown reasonable diligence in connection with the "unavailable" material.
The People declared ready on the 81st day without obtaining or disclosing at least nine discovery documents, including the activity logs of three of the four officers who responded to the scene, one of whom was potentially a prosecution witness at trial. The People knew that this material was discoverable, outstanding, and in possession of the NYPD, but made only three real post-commencement attempts to obtain it, and then made no attempts after declaring ready until nearly a month later. As explained below, the People have not shown reasonable diligence in connection with this material. Therefore, the COC filed while this material was outstanding is invalid.
As an initial matter, and contrary to the People's representations, the underlying material was not de minimis or unimportant. NYPD activity logs, "the digital versions of police memobooks," are "among[] the most basic discoverable material available in a New York City criminal case" and are "routinely disclosed." People v. Meadows, 85 Misc 3d 1215(A), 2025 NY Slip Op. 50208(U), at *3 (N.Y.C. Crim. Ct., Queens Co. 2025) (Licitra, J.); see also People v. Othman, 85 Misc 3d 1240(A), 2025 NY Slip Op. 50392(U), at *2 (N.Y.C. Crim. Ct., Kings Co. 2025) (Torres, J.) ("Police Officer activity logs are in almost every case and not some obscure report."). The belated disclosure of "routinely produced disclosure materials" counts heavily against a showing of diligence. Bay, 41 NY3d at 215.
This material was also always in the People's constructive possession because, as all acknowledge, it was held by the NYPD. See C.P.L. § 245.20(2); People v. Brandon, — AD3d &mdash, 2025 NY Slip Op 03226, at *2 (3d Dept. May 29, 2025). As other courts have observed, "the assertion that known discovery materials are not in [the People's] physical possession does not in any way excuse their failure to provide them." People v. Georgiopoulos, 71 Misc 3d 1215(A), 2021 NY Slip Op. 50380(U), at *3 (Sup. Ct., Queens Co. 2021) (Lopez, J.).
Nor was the material "unavailable" under C.P.L. §§ 245.50(3) and 245.80(1)(b) simply because the People had not obtained it from the police. Discovery documents are generally not unavailable if possessed by the police, even if the People have not yet obtained them. See People [*6]v. Johnson, 85 Misc 3d 1238(A), 2025 NY Slip Op. 50372(U), at *2 (Sup. Ct., Kings Co. 2025) (Cesare, J.). Courts have found that documents are "unavailable" when, for instance, the documents did not yet exist at the time the People declared ready. See, e.g., People v. Rushmore, 81 Misc 3d 1208(A), 2023 NY Slip Op. 51289(U), at *7, 9 (N.Y.C. Crim. Ct., Richmond Co. 2023) (Rajeswari, J.). By contrast, these documents undeniably did exist and were obtainable; the People simply were not able to get them in time.
Finally, the material was in no way fringe or insubstantial. Again, at the risk of repetition: the People had not yet obtained or disclosed the activity logs of three of the four officers on the scene of a multi-vehicle accident. Activity logs are core discovery material and one of the officers was designated a potential testifying witness at trial.
Against this backdrop, the People's attempts to obtain the material—which they knew about, were aware was missing, and was in their constructive possession—were unsatisfactory. Shortly after the commencement of the case, in mid-October, the People emailed the NYPD's discovery liaison. In the October 15/16 email, they described the outstanding documents, including the activity logs, as "missing." People's Resp., Ex. 8. Yet the People then took no action for over two months—over 60 days of chargeable time—before belatedly reaching out again on day 75. Day 75 was December 20, the Friday before Christmas, and the People's outreach amounted to an email sent after 5:00 p.m. to the same nonresponsive discovery liaison. The People's final pre-readiness effort came in the early afternoon of December 26—day 81, the day after Christmas. And after sending that December 26 email, the People waited a mere two hours before forging ahead and declaring ready.
While reasonable diligence does not require a perfect prosecutor, these efforts were not satisfactory in light of the "circumstance presented." Bay, 41 NY3d at 212. Despite the centrality of the material, the People made no effort to obtain it for nearly two months. And the final attempts at outreach—duplicating a method that had already proved not fruitful during the height of the holiday season—were too little, too late.
While the People might have nevertheless demonstrated diligence had they continued to try to obtain the material, they instead paused their efforts. The record reflects that between declaring ready and January 16, when the defense followed up on the missing discovery, the People apparently took no additional steps to obtain the missing discovery.
This is notable for two main reasons. First, the People declared ready on day 81, meaning that over a week remained on the speedy trial clock. Had the People obtained the material before day 91, any deficiency in their initial COC would be arguably academic. Second, and at the risk of belaboring the obvious, this was discovery the People already knew about; they needed no prompting from the defense to seek it out. So while one of the relevant factors is People's "response when apprised of any missing discovery," id., there was nothing to "respond" to; the People knew they had failed to turned something over, and had done nothing about it.
For these reasons, the People's (ultimately successful) late January attempts were too little, too late. The People do not explain why they did not take any these steps before the 90 days had run, or why yet another month elapsed before they escalated their outreach to the NYPD. Heroic efforts must be evaluated in context; a frantic effort as the finish line approaches is one thing, but a frantic effort nearly a month after the deadline has passed is far less persuasive.
As Rivera points out, what happened here is strikingly similar to what Judge Ortner confronted in Rafael Santos. There, the People filed their COC on the 90th day, listing various [*7]activity logs as "unavailable." Rafael Santos, 2023 NY Slip Op. 50778(U), at *2. The People's efforts to obtain the logs entailed outreach about a month after arraignment, as well as renewed efforts about two weeks before the 90 days were to expire. Id. In invalidating the People's COC, Judge Ortner observed that the People had followed up on the outstanding material "more than seven weeks after their initial request, and just 14 days before their 30.30 time was due to expire." Id. at *4. While the People acted with urgency as the deadline drew near, an "urgent" request "made at the end of the 30.30 clock and after the People's deadline for completing automatic discovery does not in this case equate to diligent, good faith efforts that were reasonable under the circumstances." Id. at *5. Finally, while at least some of the delay appeared attributable to the NYPD, the People had not explained what that shortcoming may have been. Id.
The circumstances here echo those in Rafael Santos. The People's first follow-up in this case was over nine weeks after the initial request, they acted with some urgency at the eleventh hour, and at least some of the delay appears to be due to an (unexplained) communication difficulty with the NYPD. While Rafael Santos is not binding, it is persuasive, and suggests the same outcome in this case.
To be absolutely clear, and as Rafael Santos recognized, see id., the People were not without recourse. They could have sought additional time, for instance, especially if there had been a breakdown in communication with the NYPD discovery liaison. See Bay, 41 NY.3d at 215 (describing the various ways in which the People can extend their time); see also People v. Rafael Santos, No. CR-021232-24BX, 2025 NY Slip Op 50854(U), at *3-4 (N.Y.C. Crim. Ct., Bronx Co. 2025) (Moore, J.) (invalidating COC when the People failed to disclose memo books before declaring ready and never asked for an extension of the discovery deadline). But the People did not avail themselves of these options, instead declaring ready while core material remained outstanding, and then made no effort to obtain that material for over a month. As both Rafael Santos decisions emphasize, that is not permissible.
Accordingly, the People did not exercise reasonable diligence before declaring ready.
b. The People did not exercise diligence in obtaining and disclosing some of the other, belatedly disclosed material.
The shortcoming described above likely suffices by itself to invalidate the COC. But even if it did not, the other delayed discovery would compel that outcome.
First, as of their declaration of readiness, the People had neither obtained nor divulged the body camera of a hitherto-unidentified fifth officer, Officer Ademaj, who apparently was present at the hospital and conducted many of the procedures in connection with Rivera's alleged consent to a blood draw.[FN11]
While Rivera had allegedly admitted using heroin earlier in the day, the results of and procedures surrounding the blood test would presumably have been relevant to both hearings and trial to an assessment of his incapacity. See, e.g., People v. Hartsfield, 204 AD3d 1502, 1503 (4th Dept. 2022) (discussing the use of medical testimony in a § 1194(4) prosecution); People v. Tomion, 174 AD3d 1495, 1497 (4th Dept. 2019) (same). Accordingly, Officer Ademaj's testimony about that blood draw would have held some importance to both a hearing and to trial.
The People defend their delay in providing the body camera by arguing that Officer Ademaj did not appropriately "tag" his camera footage until early February. But the People do not otherwise provide any record of outreach to Officer Ademaj or anybody else about whether he was or was not wearing a body camera.[FN12]
 Moreover, the People acknowledge that they reached out to Officer Ademaj on January 24—in other words, before he tagged his video. People's Resp. at 14; see also id., Ex. 15. Thus, there appears to have been no impediment to reaching out to Officer Ademaj prior to his tagging of the video. They simply did not do so before prompted by the defense—and, even then, waited over a week to initiate outreach.
Regarding the OCME material, the People argue that they were hobbled by testing delays. But all that they have established is that they first reached out to OCME on December 30, four days after they declared ready, and almost two months after the search warrant for the blood had been issued. There is no indication of when the litigation packet was actually available. Thus, it is at best unclear whether the People "made reasonable inquiries to initiate the OCME analysis in furtherance of their duties pursuant to CPL § 245.20 (1) (j) and (2)," or otherwise to obtain the completed test results. People v. Mendoza, 83 Misc 3d 948, 954 (N.Y.C. Crim. Ct., Bronx Co. 2024) (González-Taylor, J.). And as it is the People's burden to show their diligence, an unclear record does the People no favors.
The other shortcomings do not require a separate analysis. In sum, the People failed to meet their burden of showing that they exercised reasonable diligence to ascertain the existence of this material, or to promptly disclose it to the defense.
V. Conclusion
Again, misdemeanor notwithstanding, this is a serious case. But outside of the sliding scale of § 30.30 time periods governed by the severity of the top count, the discovery statute makes no exceptions for serious cases.
Because the People did not fulfill their discovery obligations before declaring ready on the 81st day, their initial COC is invalid, and its filing did not stop the § 30.30 clock. And since at least 91 days elapsed before the supplemental COCs were filed, or before any time became excludable, dismissal is "require[d]." People v. Labate, 42 NY3d 184, 190 (2024).
Accordingly, the branch of Rivera's motion seeking dismissal is GRANTED, and the matter is DISMISSED pursuant to C.P.L. §§ 30.30 and 170.30. The remainder of the motion is DENIED as academic.
Dated: May 29, 2025
Bronx, NY
David L. Goodwin
Judge of the Criminal Court

Footnotes

Footnote 1:"A court may deem the prosecution ready for trial pursuant to section 30.30 of this chapter where information that might be considered discoverable under this article cannot be disclosed because it has been lost, destroyed, or otherwise unavailable as provided by paragraph (b) of subdivision one of section 245.80 of this article, despite diligent and good faith efforts, reasonable under the circumstances." C.P.L. § 245.50(3). The relevant subsection of C.P.L. § 245.80 addresses sanctions for "lost or destroyed" material, but (as other courts have observed) does not actually define "unavailable." See C.P.L. § 245.80(1)(b); People v. Perez, 73 Misc 3d 171, 175 n.1 (Sup. Ct., Queens Co. 2021) (Lopez, J.) (observing this "[c]urious[]" omission from the statutory language).

Footnote 2:See Defense's Reply, Ex. E at 1 (reflecting that defense counsel's notice of missing discovery was emailed at 3:25 p.m. on January 16); People's Resp., Ex. 11 at 1 (reflecting that the People's January 16 email to the discovery liaison was sent at 7:18 p.m.).

Footnote 3:Because the objections are voluminous, only the central disputes discussed in the "Discussion" section are addressed above the margin. All others have nevertheless been assessed and considered, even if not specifically mentioned.

Footnote 4:At the discovery conference, the People represented that they reached out to the discovery liaison "countless times" before declaring ready, Defense's Mot., Ex. C at 25, but it appears that the outreach was limited to the enumerated dates set out above the margin.

Footnote 5:See Defense's Mot., Ex. C at 23.

Footnote 6:At the time of writing, the 2025 amendments to the discovery law not yet taken effect.

Footnote 7:Wingate, upon which the People rely, is an unreported decision that the People did not provide in their papers. In any event, if Wingate held that all such periods are automatically excludable—the People's own description would suggest otherwise—such a holding would be neither binding nor particularly persuasive, as it would be out of sync with current practice.

Footnote 8:As a matter of equity, there may be situations where a lengthy delay in furnishing objections by the defense, coupled with a strong showing of diligence by the People, might counsel in favor of excluding some or part of the period after the filing of a COC, even if the COC were otherwise invalidated. Here, though, even that period would be cut short by Rivera's January 16 objections; and since more than 10 days elapsed between those objections and the People's January 29 furnishing of the activity logs, the People would face dismissal regardless.

Footnote 9:The action sheet appears to reflect that only defense counsel was required to prepare a letter, but the above assumes that the letter was joint.

Footnote 10:Even if it were otherwise, the People have not shown that any delay resulted from the joint letter. See C.P.L. § 30.30(4)(a); see also People v. Sturgis, 38 NY2d 625, 627—28 (1976), abrogated in part by statute on other grounds as recognized in People v. Williams, 78 AD3d 160, 165 (1st Dept. 2010). Indeed, the short adjournment between the scheduled January 22 appearance and the January 30 conference suggests that the letter had no effect on the rapid movement towards a discovery conference.

Footnote 11:In fact, Officer Ademaj goes unmentioned in the People's initial COC, although Rivera disclaims any reliance on this notable shortcoming. See Defense's Mot. at 25 n.6.

Footnote 12:The record is somewhat inconsistent. At the discovery conference, the People represented that they did not know about Officer Ademaj's body camera until he tagged the exhibit on February 3. See Defense's Mot., Ex. C at 23. But in their response, the People state that they reached out to Officer Ademaj on January 24. People's Resp. at 14.