People v Pilgrim (2025 NY Slip Op 52115(U))

[*1]

People v Pilgrim

2025 NY Slip Op 52115(U)

Decided on December 22, 2025

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 22, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

againstD. Pilgrim, Defendant.

Docket No. CR-006839-25BX

For the Defendant:Ben Mackin 
(The Bronx Defenders)For the People: 
Bronx ADA Cara L. Hernandez

David L. Goodwin, J.

In the main branch of his omnibus motion, defendant D. Pilgrim [FN1]
argues that the People's certificate of compliance (COC) should be invalidated, and the accusatory instrument dismissed under C.P.L. § 30.30, because the People declared ready for trial without having disclosed a full and complete set of domestic incident reports (DIRs) and complaint follow-up informational reports (DD5s)—with "complete" being more salient than usual, as some of the documents provided by the People were truncated due to a scanning error. The People also had not provided a precinct command log or tried to obtain EMS/FDNY documents prior to declaring ready.
As set forth below, however, the record establishes the People's due diligence in discharging their discovery obligations. So the branch of Pilgrim's motion that seeks dismissal is DENIED.I. BackgroundDefendant Pilgrim is charged with third-degree assault (P.L. § 120.00(1)) and second-degree harassment (P.L. § 240.26(1)), arising out of allegations that he struck, scratched, and bit the complaining witness after a February 12, 2025 argument. The accusatory instrument dates from March 10, about a month later; Pilgrim was arraigned that same day. The case also was in bench warrant status (either stayed or ordered) from April 24 through May 22.
The People filed their discovery materials and declared ready on June 11, 2025, which the defense calculates as day 63. See Defense's Aff. ¶ 11. According to their certificate of compliance (COC), the People had disclosed, among other things, 911-call materials, activity logs for eight officers, body-camera footage for seven of those officers (the eighth was on desk duty and did not have his camera activated), Giglio material for two officers, and several domestic incident reports (and "scratch" versions of those reports). The People also listed as "unavailable" an arrest/command log, which (per the COC itself) the People had requested across several dates in March, April, and May, but had not yet received.
The defense sent objections by email a little over a month later, on July 17, 2025. Three of the twelve categories of objections are relevant here.
First, the defense observed that three of the provided DD5s had attachments, yet the defense had not received "complete scans" of those DD5s. Defense's Mot., Ex. A at 1. The defense requested that the People share "the DV Unit's DD[5]s and the attachment from DV DD[5](3)." Id. Second, the defense observed that a command log [FN2]
appeared to be missing, and asked whether one had been created in this case. Id. Third, according to the defense's review of body-camera footage and radio run, an ambulance was called to the scene; the defense requested EMS records or EMT contact information. Id. at 1—2.
The People responded on July 23. They indicated that all of the DD5s had already been shared; that the command log was now presumed lost, after the People had undertaken additional efforts to obtain it after declaring ready; and that the complainant refused medical attention at the scene, so no EMS records were generated, and in any event, that EMS records would not be in the custody or control of the People. Defense's Mot., Ex. C at 1—5.
The defense followed up by email on July 24. As to the DD5s, the defense laid out the tally of the DD5s and asked again for "complete scans," as well as any additional DD5s that had not been provided. Id., Ex. D at 1.
Across a lengthy response, the People acknowledged that one of the attachments was actually a scratch DIR that had been requested but not yet provided, but which also duplicated a final DIR that had already been disclosed; the People now disclosed that scratch DIR. Id., Ex. E at 1.
On July 24, the parties appeared in court for a discovery conference. At that conference, the defense clarified (apparently for the first time) that the actual scans of the DD5s were incomplete, meaning cut-off/truncated. See People's Resp., Ex. C at 8—10. In response, the People also clarified that they had assumed (incorrectly) that no new DD5s had been created after the case was transferred from the detective squad to the domestic violence squad. Id. at 10.
This motion schedule was set. The parties continued to confer after the setting of the motion schedule. The scratch DIR was disclosed that day; complete copies of the relevant DD5s [*2]were disclosed on August 5, and were the subject of a supplemental COC on August 13, in which the People represented that they believed the material to have already been disclosed. See Defense's Mot., Ex. L at 2.
The defense motion is now fully briefed and ripe for disposition.
II. The Parties' Dismissal Arguments
In the relevant branch of his counseled omnibus motion, Pilgrim seeks invalidation of the COC, and dismissal of the accusatory instrument on § 30.30 grounds. From his original twelve objections during conferral, Pilgrim limits his motion to three: the nondisclosure of the EMS records and command log—the latter of which the People inappropriately listed as "unavailable" in the COC—and the belated disclosure of the various complete DD5s and DIRs.[FN3]

Regarding the EMS records, the defense contends that FDNY is a law enforcement agency under Article 245, and that "[c]ourts have held that such records are automatically discoverable and invalidated COCs where such records were not turned over." Defense's Mot. at 15 (citing People v. Rahman, 79 Misc 3d 129(A), 2023 NY Slip Op. 50692(U) (App. Term, 2d, 11th, & 13th Jud. Dists. 2023)).
Regarding the DD5s and DIRs, Pilgrim contends that the People must not have reviewed the discovery they provided, else they would have realized that only incomplete copies of the materials had been disclosed. Defense's Mot. at 18—19. Pilgrim observes also that the complete narrative of the core incident was not fully set forth in any of the originally provided documents—that narrative being:
At TPO P1 states P2 did get aggressive with P1 over a verbal dispute. Verbal dispute became physical when P2 punched P1 in the face and bit his arm causing pain, bruising, and minor laceration to abdom[e]n, arm, neck and lip. CV RMA on scene. Cops unk. Defense's Mot. at 19.In response,[FN4]
the People concede that "the path to certification in this matter was imperfect," People's Resp. at 7, but argue that they nevertheless demonstrated due diligence overall, both before and after declaring ready. In particular, they corrected the scanning issue with the DD5s within eight days of the discovery conference and within nineteen days of the defense's initial objections. Id. They otherwise provided a "robust" discovery package and reacted diligently to inquiries from the defense. Id.
Regarding those DD5s, the People affirm, among other things, that they misunderstood the defense's outreach about "complete scans" as referring to the completeness of the set, not the completeness of the individual DD5s, and did not realize that some of the DD5s were cut off at the bottom. The missing scratch DIR had been initially overlooked because it was mislabeled. See People's Resp. Aff. ¶¶ 20, 27—28; see also People's Resp. at 27. Communications with the arresting officer also led the People to believe that they had disclosed everything that existed at the time of the filing of the COC. Id. at 27. The People otherwise acted diligently to fix their mistakes and track down anything missing upon being alerted by the defense. Id. at 26—27.
The People also argue that Pilgrim was not prejudiced by the omissions. While acknowledging their "luck," the People point out that the material omitted by the scanning error ended up being of no importance. Id. at 28. 
Regarding the command log, the People detail their outreach on March 21, March 24, March 31, and April 15 to the discovery liaison; a phone call on March 28 to the arresting officer; a separate March 31 email to the arresting officer; as well as additional phone calls and correspondence on April 15, in May, and on July 20. People's Resp. Aff. ¶ 32. The People emphasize that Pilgrim was arrested on an unrelated Manhattan matter, and eventually returned to the Bronx on an Icard; since only the arresting officer would have information about the command log, he and only he would be the point of contact for it, thereby explaining the People focus on him during outreach. People's Resp. at 23. Pilgrim would not otherwise be prejudiced by the nondisclosure of the log, which is generally an administrative document. Id.at 24.
Regarding the EMS/FDNY materials, the People contend that those documents are not within their possession or control because FDNY is not a law-enforcement agency, and thus the records are not discoverable. They also point to the defense's own power to subpoena those records, which absolves the People of their obligation to obtain the records under § 245.20(2). People's Resp. at 18—19. In addition to distinguishing Rahman, the People emphasize that the complainant did not receive treatment in this case. Id. at 19. They also argue that the defense did not suffer any prejudice from the nondisclosure of the potential FDNY records, which would include EMT contact information. Id. at 20—21. However, the People indicate that they have now subpoenaed those documents out of an abundance of caution. See id. at 14; see also People's Resp., Ex. D.
In reply, Pilgrim challenges the People's record on diligence, and otherwise reaffirms his arguments.
III. Legal Standard [FN5]

In a case like this one, where the top count is a misdemeanor punishable by a sentence of more than three months, the People must be ready for trial within 90 days. C.P.L. § 30.30(1)(b). If they are not ready within that 90-day window, the accusatory instrument must be dismissed on motion by the defense. C.P.L. §§ 30.30(1)(b), 170.30(e); People v. Labate, 42 NY3d 184, 190 (2024).
Under the current discovery laws, the People must comply with their discovery obligations before declaring readiness for trial. See C.P.L. § 30.30(5)(a). The People do so by, among other things, filing a COC. If the People's COC is later deemed invalid, any declaration of readiness is deemed illusory and the § 30.30 clock continues to run, requiring dismissal if over 90 days have elapsed. See People v. Bay, 41 NY3d 200, 213 (2023).
A COC is invalid if the People have not exercised due diligence and good faith in fulfilling their discovery obligations. C.P.L. §§ 30.30(5)(a)—(b), 245.50(6). Factors relevant to diligence include:
the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.C.P.L. § 245.50(5)(a). These factors must be assessed holistically, rather than line-by-line, with no one factor or shortcoming being determinative. Id. § 245.50(5)(b); People v. Cooperman, 225 AD3d 1216, 1220 (4th Dept. 2024). The People bear the burden of establishing their own diligence. Bay, 41 NY3d at 213.
IV. Discussion
The People have met their burden of demonstrating that they discharged their discovery obligations with the appropriate level of diligence and good faith. The request to invalidate their COC is thus denied.
Beginning with the DIRs and DD5s, it is undeniable that the People did not disclose complete copies of all of those documents at the time they declared ready. The People also should have realized that the documents were not scanned correctly on their own initiative, regardless of their misunderstanding of the defense's objections—which, to the People's credit, did not appear to mention the actual truncation issue before the discovery conference.
Still, the People swiftly fixed the error after being alerted by the defense, and a conferral yielding acquisition of the missing material satisfies a number of the due diligence factors. See People v. Whitney, ___ Misc 3d ___, 2025 NY Slip Op. 25248, at *5 (N.Y.C. Crim. Ct., Bronx Co. 2025) (David, J.). The People also plausibly argue that they were lucky, in that the truncated material ended up being substantially duplicative of material already available to the defense.
Regarding the command log, and setting aside for the moment whether it should have [*3]technically been listed as "unavailable" in the COC,[FN6]
the People reached out on several different occasions spanning the months of March, April, and May; while the People perhaps should have undertaken additional efforts during May itself, it appears that the People redirected their resources during the time the case was in bench-warrant status. The People also clarify why they directed their efforts at the arresting officer, and why they do not expect this particular command log to have much of use.
Finally, regarding the EMS material, the People appear to have the better argument both on Rahman and on the defense's ability to obtain the material via subpoena. As an initial matter, while Pilgrim persuasively argues that the material should be discoverable under several subsections of § 245.20(1), the People's initial discovery obligations are "defined by a relevancy prong and a possessory prong," People v. Walker, 232 AD3d 1214, 1215 (4th Dept. 2024)[FN7]
—and it is on the possessory prong that the defense arguments falls short. Rahman's conclusion on the discoverability of FDNY/EMS records was cabined to "the circumstances of th[e] case," where the police themselves had summoned emergency services after the complainant went to the precinct. Rahman, 2023 NY Slip Op. 50692(U), at *1—2. In other words, when emergency services or FDNY work under police direction, the documents that result can be deemed within the People's possession or control. See People v. Ajunwa, 75 Misc 3d 1220(A), 2022 NY Slip Op. 50626(U), at *3 n.4 (N.Y.C. Crim. Ct., Bronx Co. 2022) (Licitra, J.). That is apparently not what happened here; more to the point, if FDNY were a "law enforcement agency," as the defense suggests, the distinction upon which Rahman relied would not have been necessary. And [*4]while Pilgrim emphasizes that the ability of the defense to subpoena records does not absolve the People of their lack of diligence, see Defense's Reply at 6 (pdf pag.), he does not quite argue that he was without the ability to subpoena the material himself, especially as it would likely not have required a HIPAA release.
Even if it were otherwise, however, on this particular record, the People's failure to subpoena the records would not weigh so heavily against diligence to require invalidating the COC. While Pilgrim is correct that the EMT contact information, and the observations of the EMTs more broadly, could be relevant to his case, the lack of that information does not, without more, implicate the People's core readiness in such a way as to tip the scale in favor of dismissal.
In sum, none of the three core issues identified by the defense undermines the People's exercise of due diligence in this relatively straightforward case, and against the backdrop of the volume of discovery otherwise provided. As the relevant § 245.50(5)(a) factors favor the People, the request to deem the COC invalid does not prevail.
* * *
For the reasons set forth above, the People's COC is deemed VALID. Because there appears to be no argument that more than 63 days of chargeable time elapsed if the People's COC were valid, the branch of the motion seeking dismissal on § 30.30 grounds is DENIED.
Any Sandoval/Molineux/Ventimiglia/preclusion issues are referred to the trial court. Any request for relief not specifically mentioned is DENIED. Because Pilgrim has not sought hearings, this matter should be adjourned for trial.
Dated: December 22, 2025Bronx, NYDavid L. GoodwinJudge of the Criminal Court

Footnotes

Footnote 1:The version of this decision submitted for electronic publication has been lightly redacted to remove certain identifying information.

Footnote 2:A command log "memorializes the dates, times, and results of activities, such as inspections, conducted by the desk officer, tour start and end times for officers, among other administrative information," and may also "note the defendant's physical and mental well-being, property recovered, arresting officer information as well as an officer's handwritten notes of the defendant." People v. Korovskyi, 84 Misc 3d 1242(A), 2024 NY Slip Op. 51664(U), at *4—5 (N.Y.C. Crim. Ct., Kings Co. 2024) (Torres, J.). 

Footnote 3:Pilgrim lists the other materials in his affirmation, see Defense's Mot. at 4—5, and writes that the COC challenge is to the outstanding discovery which "includes, but is not limited to" the categories mentioned above the margin, id. at 15. His argument, however, is limited to just those three categories.

Footnote 4:The People challenge the sufficiency of the defense's conferral efforts. Assuming that the sufficiency of conferral can be an independent procedural bar even if, as here, the defense has filed the affirmation required by C.P.L. § 245.50(4)(c), but cf. People v. Williams, ___ NY3d ___, 2025 NY Slip Op. 06535, at *3—4 (2025) (concluding that C.P.L. § 30.30(5-a) requires only that the People file a certification that all counts are facially sufficient, not that the certification be accurate), the record establishes the requisite degree of conferral by the defense to vault any bar and receive merits review.

Footnote 5:This decision applies the post-August-20025 standard of C.P.L. § 245.50(5)(a) to assess the People's diligence, for substantially the reasons set forth in People v. Guevera, 87 Misc 3d 1238(A), 2025 NY Slip Op. 51825(U), at *2 (N.Y.C. Crim. Ct., Bronx Co. 2025); People v. Delvalle, 87 Misc 3d 1231(A), 2025 NY Slip Op. 51753(U), at *7 (N.Y.C. Crim. Ct., Bronx Co. 2025); and People v. Jefferson M.Q., ___ Misc 3d ___, 2025 NY Slip Op 25224, at *2—3 (N.Y.C. Crim. Ct., Bronx Co. 2025) (Bahr, J.). For the sake of simplicity, the decision also evaluates the People's COC and discovery obligations under the statute in effect at the time the People certified, although that is a distinction without a difference here.

Footnote 6:As the defense points out, see Defense's Mot. at 16, I have in the past expressed skepticism that material within the People's possession or control may properly be listed in the COC as "unavailable" under C.P.L. § 245.50(3). See People v. Rivera, 86 Misc 3d 1206(A), 2025 NY Slip Op. 50877(U), at *8 (N.Y.C. Crim. Ct., Bronx Co. 2025). But I am now not so sure this was right. As I've also observed, see id. at *2 n.1, C.P.L. § 245.80(1)(b) does not actually define "unavailable," despite providing definitions for "lost" and "destroyed"; and since the People's diligent efforts can excuse the inability to obtain certain discovery material in time, how else are the People to classify that which is in their constructive possession, see C.P.L. § 245.20(2), but has not yet been obtained despite their diligent efforts? This is especially so if the People's COC burden is entirely linked to their initial discovery obligations, see note 7 below, and thus disregards their efforts to obtain material not within their actual or constructive possession.

Footnote 7:This poses another issue, as the Third and Fourth Departments appear to have held that only initial discovery obligations are relevant to the validity of a COC and, by extension, that a COC generally cannot be invalidated based on an alleged § 245.20(2) failure to obtain discovery not within the People's possession or control. See People v. Branton, 238 AD3d 1429, 1431 (3d Dept. 2025); People v. Radford, 237 AD3d 1511, 1512 (4th Dept. 2025). As the parties have not argued this issue, and as this line of doctrine does not appear to have jumped to the First or Second Departments, this decision assumes that the People's diligence under (2) may still have some relevance.