People v Meadows (2025 NY Slip Op 50208(U))

[*1]

People v Meadows

2025 NY Slip Op 50208(U)

Decided on February 20, 2025

Criminal Court Of The City Of New York, Queens County

Licitra, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 20, 2025
Criminal Court of the City of New York, Queens County

The People of the State of New York

against
Meadows, Defendant.

Docket No. CR-018813-24QN

For the People: Melinda Katz, District Attorney of Queens County (by Molli Michalik)
For Mr. Meadows: Queens Defenders (by Benjamin L. Drachman)

Wanda L. Licitra, J.

Pending before the court is a C.P.L. § 30.30 motion to dismiss alleging that the prosecution's statement of readiness was illusory. It argues their readiness was illusory because they failed to first file a proper certificate of automatic discovery compliance. Such a certificate requires the prosecution to certify two things. (C.P.L. § 245.50[1]). First, that they have exercised "due diligence" and made "reasonable inquiries" to "ascertain the existence of material and information subject to discovery." (Id.). And second, that "after" doing so, they "ha[ve] disclosed and made available all known material and information subject to discovery." (Id.). Thus, a necessary component of a proper certificate of compliance is that, prior to filing it, the prosecution "in fact" exercised due diligence and made reasonable inquiries to ascertain the existence of discoverable material. (See generally People v. Bay, 41 NY3d 200, 213 [2023]). Absent "an individualized finding of special circumstances in the instant case," the prosecution "shall not be deemed ready for trial" until it has filed a proper certificate of compliance. (C.P.L. § 245.50[3]). "A statement of readiness at a time when the People are not actually ready is illusory and insufficient to stop the running of the speedy trial clock." (People v. England, 84 NY2d 1, 4 [1994]).
The requirement that the prosecution exercise reasonable diligence does not create a rule of "strict liability" or require a "perfect prosecutor." (Bay, 41 N.Y.at 212). "However, the fact that the People turned over substantial discovery does not by itself establish due diligence." (People v. Nigel D., 83 Misc 3d 1280[A], at *2 [Sup. Ct., Kings County 2024]; see also People v. Burden, 83 Misc 3d 1254[A], at *4 [Crim. Ct., NY County 2024] ["[S]ubstantial compliance and lack of bad faith will not suffice under Article 245, and the Legislature has rejected amendments such as these."])). Rather, "the key question" is "whether the prosecution has exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery." (Bay, 41 NY3d at 211). "Reasonableness, then, is the touchstone—a concept confirmed by the statutory directive to make 'reasonable inquiries.'" (Id. at 211-212). This question is "case-specific," and it will "turn on the circumstances presented." (Id. at 212).
To be clear, the prosecution's automatic discovery obligation is their obligation, and it does not involve a back-and-forth in which defense attorneys "confer" about their discovery [*2]"requests" with prosecutors. Under the law, it is the prosecution which is tasked with exercising due diligence to ascertain the existence of their own discoverable information in the first instance. (C.P.L. § 245.50[1]). "[T]he discovery statute now imposes upon the People an affirmative obligation to ferret out and ascertain" discoverable material. (People v. Castellanos, 72 Misc 3d 371, 376-77 [Sup. Ct., Bronx County 2021]). The prosecution may not "shift the burden to the defendant" to "remind[]" them of "their automatic discovery obligations." (People v. Rivera, 78 Misc 3d 1219[(A]), at *4 [Sup. Ct., Queens County 2023]). Indeed, "discovery demands are now defunct." (People ex rel. Ferro v. Brann, 197 AD3d 787, 787-88 [2d Dep't 2021]; see also People v. Pagan, 75 Misc 3d 11, 12-13 [App. Term, 2d Dep't 2022] [noting the same]). "The current statutory framework of CPL 245.10 abolishes the prior mechanism for obtaining discovery through serving a demand upon the People and instead requires that the People provide the discovery listed in CPL 245.20 automatically within the deadlines established therein." (Ferro, 197 AD3d at 787-88).
On a C.P.L. § 30.30 motion, such as this one, the prosecution "bear[s] the burden" of "establishing" that they, "in fact," exercised due diligence and made reasonable inquiries "prior to filing" their certificate. (Bay, 41 NY3d at 213). "If the prosecution fails to make such a showing, the COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed." (Id. at 214). "Conclusory assertions by the People that they filed the COC 'in good faith after exercising due diligence' will not suffice." (Nigel D., 83 Misc 3d 1280[A], at *2). "Upon a challenge to a [certificate of compliance], it is incumbent upon the People to detail the efforts they made to comply with their discovery obligations." (Id.; see also People v. Hooks, 78 Misc 3d 393, 402 [Crim. Ct., Kings County 2023] [the prosecution must "show[] how their actions were diligent"]; People v. Critten, 77 Misc 3d 1219[A], at *3 [Crim. Ct., NY County 2022] [assessing "due diligence requires the People to show how due diligence was exercised"]; People v. McKinney, 71 Misc 3d 1221[A], at *7 [Crim. Ct., Kings County 2021] [the prosecution must provide the "necessary factual basis" on which a court could find "due diligence"]). 
In this case, the prosecution's record is confusing, inherently contradictory, and evinces a fundamental misunderstanding of their discovery obligations. At the outset, the prosecution declares:
Defendant claims that the People's COC was invalid because, at the time it was filed, the People had not yet disclosed names and contact information for persons with information relevant to the offense charged; names and work affiliations for law enforcement officers with information relevant to the offense charged; missing activity logs, ICADs, 911 call metadata, ambulance call records; BWC footage and 911 call records; photos taken in connection with the arrest; medical records of the complainant; and inducement made to the complainant. But these documents do not relate to the subject matter of the case and, therefore, are not automatically discoverable under section 245.20(1) of the Criminal Procedure Law.
(Pr. Resp. at 21-22 [emphasis added]). This claim borders on the absurd and highlights the Legislature's wisdom in enacting a statute that "removes . . . discretion" from prosecutors to determine "what and how much discovery to turn over." (E.g., People v. Horton, 83 Misc 3d 1283[A], at *6 [Sup. Ct., Kings County 2024] [internal quotation marks omitted]; see also [*3]People v. Rugerio-Rivera, 77 Misc 3d 1230[A], at *1 [Crim. Ct., Queens County 2023] [observing that the discovery statute was "designed to set a standard of uniform discovery across different jurisdictions and remove the discretion of the parties in determining what types of items to disclose"]). All these documents are obviously related to the subject matter of this case and are, in fact, explicitly discoverable under various subsections of C.P.L. § 245.20[1].
With the prosecution's claim in mind, it is no wonder that they then go on to give short shrift to the various items that they plainly failed to ascertain and disclose in this case.
For instance, take the police activity logs. While the prosecution disclosed the logs of two officers, Holfester and Criollo, police documents clearly indicate that several other officers were involved in this case. These include Ponce, who took the complaint, (Def. Mot. Ex. E); Roark, Siraco, and Nolan, who submitted DD5s, (Def. Mot. Ex. G); and Houlihan, who conducted a follow-up "home visit" interview with the complainant, (id.). NYPD activity logs are, of course, amongst the most basic discoverable material available in a New York City criminal case. They are the digital versions of police memobooks, and they are routinely disclosed. (See Bay, 41 NY3d at 215 [noting that a reasonably diligent prosecutor does not fail to ascertain "routinely produced disclosure materials"]). Indeed, even before discovery reform, police memobooks were for decades understood to be Rosario material that the prosecution had to disclose. Despite all this, the prosecution provides zero information here as to why they failed to ascertain and disclose these activity logs before certifying compliance.
Or take the 911 calls. Discovery documents indicate that at least five 911 calls were made in connection with this case. (Def. Mot. Ex. B). The prosecution (despite inexplicably declaring these materials to be "not automatically discoverable") disclosed the audio and metadata from four calls but did not include the standard "ICAD" printout associated with each one. Meanwhile, they disclosed an ICAD related to a fifth call, but did not disclose any audio or metadata related to it. Despite this set of circumstances, the prosecution confusingly declared in an email to the defense attorney that, in fact, "no such documents" relating to 911 calls exist in this case "because the report was made in person." (Def. Mot. Ex. C). In their response, they similarly state that "no 911 call was generated in response to this complaint." (Pr. Resp. at 28). At the same time, however, they state that "the four 911 calls are the only calls made in relation to the subject matter of this case." (Id.). Not only does the prosecution's record muddy the waters—leaving the court to speculate as to what they intend to say—it provides no reasonable explanation for why they failed to ascertain and disclose the standard ICAD printouts for the calls they disclosed, or why they failed to ascertain and disclose the fifth 911 call for which an ICAD was produced.
Or take the photos taken by the police in connection with this case (again, something that the prosecution inexplicably declares to be "not automatically discoverable"). Body-worn camera footage depicts the police taking photos of the complainant's alleged injuries. No such photos were disclosed. The prosecution, in their response, state that they "never received any pictures of the complainant's injuries and thus any pictures not in the People's possession are not intended to be used at trial." (Pr. Resp. 28-29). So ends the prosecution's explanation. But the discovery statute does not simply require the prosecution to disclose photos that are in the prosecution's possession and "intended to be used" by them at trial. To the contrary, it requires that the prosecution diligently ascertain the existence of police photos in the police's possession and disclose them, regardless of whether the prosecution intends to use those photos at trial. (See C.P.L. §§ 245.20[2]; 245.20[1][h]).
All in all, the defense points this missing material out because they reviewed the prosecution's discovery production and saw plenty of items referenced that were not disclosed. But this is not supposed to be a task for defense attorneys. A diligent prosecutor reviews their own discovery production to determine whether other material may reasonably exist. They do not outsource this obligation to their adversary—as they apparently did here. (See E.g., People v. Crosse, 84 Misc 3d 1205[A], at *3 [Crim. Ct., Kings County 2024] ["As Defendant points out, the successful home visit appears four separate times across multiple documents; a review of the documents would have immediately alerted the Prosecution, as it did Defendant."]; People v. Valentine, 2019BX030896, at *9 [Crim. Ct., Bronx County 2021] [where the prosecution only realized their failure to disclose after "defense counsel examine[d] the prosecution's discovery materials and point[ed] to clear references that other undisclosed discoverable items exist[ed]," a court "cannot find that the prosecution acted reasonably and diligently"]; People v. Pierna, 74 Misc 3d 1072, 1092 [Crim. Ct., Bronx County 2022] [the prosecution failed to establish due diligence "inasmuch as it is alleged in the criminal court that the officer sustained physical injuries, the People were on reasonable notice of the potential existence of the photographs"]; People v. Ajunwa, 76 Misc 3d 1217[A], at *2 [Crim. Ct., Bronx County 2022] [no due diligence when the prosecution failed to disclose a police report that was "referenced in an NYPD Omniform System complaint report"]; People v. Trotman, 77 Misc 3d 1210[A], at *5 [Crim. Ct., Queens County 2022] [no due diligence when "the People were plainly on notice that the accident and Z-Finest reports existed" because they were on a "police index"]; see also People v. Guzman, 75 Misc 3d 132 [App. Term, 2d Dep't 2022] [no due diligence where the prosecution provided "no explanation as to why they did not check the items sent to them . . . against the police reports they sent to the defense"]; cf. People v. Cooperman, 225 AD3d 1216 [4th Dep't 2024] [in which missing materials would not have been obvious to the prosecution despite their diligent efforts]).
Also troubling: the prosecution here unilaterally disregarded all the discovery statute's deadlines for discovery and opted instead to begin sharing material at 5:29 p.m. on the last day of the readiness deadline for the entire case. (Cf. C.P.L. § 245.10[1][a] [requiring discovery production well before then]). Then, at 5:54 p.m. on that last day, the prosecution declared the case trial ready. (Cf. People v. England, 84 NY2d 1, 5 [1994] [prosecutors cannot state ready when trial within the readiness period would be "impossible"]; People v. Goss, 87 NY2d 792, 798 [1996] [same]). These acts are not consistent with "the diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement." (Bay, 41 NY3d at 211; cf. People v. Jawad, 84 Misc 3d 31, 36 [App. Term, 2d Dep't 2024] [in which prosecutors filed "their initial COC and turned over the items . . . well before the 90-day statutory speedy trial deadline"]).
As it turns out, when the prosecution went to disclose these materials on the last day of their readiness deadline, two body-worn camera footage files "did not go through" due to what the prosecution calls "a technical error." (Pr. Resp. at 33). The prosecution provides no information as to what measures or standards they used in this case to ensure that discovery sent through their own "discovery monitor" successfully went "through." (See id.; People v. Francis, 75 Misc 3d 1224[A], at *3 [Crim. Ct., Bronx County 2022] ["Here, the People chose to use their own OneDrive process to meet their discovery obligations document by document. Accordingly, they bore the burden of diligently ensuring that their own process and technology actually worked."]; see also People v. Carter, 80 Misc 3d 127[A], at *2 [App. Term, 2d Dep't 2023] [*4][noting that a "possible technological error" does not excuse the prosecution from its obligations to diligently produce discovery]). Instead, prosecution again apparently outsourced this obligation to the defense. But even when the defense attorney emailed the prosecution and alerted them that the files were missing, the prosecution then took over two months to finally send the files. Again, none of this is consistent with "the diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement." (Bay, 41 NY3d at 211).
Finally, this court refuses to countenance the prosecution's unreasonable refusal to produce body-worn camera audit logs in criminal cases. In late 2023—nine months before the prosecution filed their certificate of compliance in this case—Judge Gershuny of Queens Criminal Court held a comprehensive evidentiary hearing to determine the nature of these documents. (People v. Ballard, 82 Misc 3d 403 [Crim. Ct., Queens County 2023]). In that case, the District Attorney of Queens County had represented that the logs did "not contain any substantive information related to the facts of the case and were intended for clerical purposes only." (Id. at 411). At the hearing, Allison Arenson, the Director of the NYPD's Body-Worn Camera Unit Legal Bureau, testified. The court found that the prosecution's description of the audit logs was "belied by the clear record" made by Ms. Arenson at the hearing. (Id.).
The import of Judge Gershuny's hearing cannot be understated. After a few decisions in 2020 and 2021 assuming that the logs were mere "metadata" or "chain of custody information," Ballard made clear that these documents often contain written statements about the case by the police, among other material that would fall under C.P.L. § 245.20[1]. Based on Judge Gershuny's comprehensive hearing and explanation, "[t]he majority of courts that have addressed [body-worn camera audit logs] agree . . . that C.P.L. § 245.20 dictates that [they] be produced by the People as part of their automatic discovery responsibility." (People v. Bresnan, 219 N.Y.S.3d 860, 865 [Just. Ct., Monroe County 2024]; see, e.g., People v. J.M.W., 83 Misc 3d 1289[A] [Sup. Ct. Kings County 2024] [Quiñones, J.]; People v. Shar, 82 Misc 3d 1251[A] [Crim. Ct., Richmond County 2024] [Rajeswari, J.]; People v. James, 82 Misc 3d 1248[A] [Crim. Ct., Kings County 2024] [Robinson, J.]; People v. Robert K., 83 Misc 3d 1229[A] [Crim. Ct., NY County 2024] [Morales, J.]; People v. Lyte, 83 Misc 3d 1204[A] [Crim. Ct., NY County May 10, 2024] [Lewis, J.]; People v. Cumbe, 82 Misc 3d 1242[A] [Crim. Ct., Kings County 2024] [Mimes, J.]). These decisions join the decisions of this court, and at least one other court, which had also previously examined the logs and found them to be discoverable, as well. (People v. Torres, 79 Misc 3d 1204[A] [Crim. Ct., Queens County 2023] [Licitra, J.]; People v. Champion, 81 Misc 3d 292 [Crim. Ct., NY County 2023] [Rosenthal, J.]).
The problem in this case is that nine months after the Ballard decision, the prosecution still inexplicably held onto erroneous understandings of these police documents to justify ignoring them. In fact, just like in Ballard, the prosecution here—which is the same prosecutor's office as that in Ballard—reiterates the incorrect statement that the audit logs "do not contain statements or writings of any potential witness." (Pr. Resp. at 35). This court is perplexed why the prosecution continues to repeat a disproven factual description of the logs despite Judge Gershuny's comprehensive evidentiary hearing. As noted above, at least eight courts have reviewed the audit logs in their own cases and agreed with his exposition.
As such, it is unreasonable for prosecutors to continue regurgitating the factual inaccuracy that these documents do not even contain written police statements about the case. The nature of the audit logs is now obvious. As all the courts above have plainly observed from [*5]reviewing them, these documents often contain notes and comments of police about the case. (See C.P.L. § 245.20[1][e]). They also concern electronic information about the case created and obtained on behalf of law enforcement. (See C.P.L. § 245.20[1][u]). The substance of the information is created, stored, and obtained by or behalf of law enforcement. (See id.). And they may reasonably contain information that can be used to impeach testifying law enforcement witnesses. (See C.P.L. § 245.20[1][k][iv]). "[T]he [older] trial-level case law the People rely upon" is simply "not supported by the hearing record" of the NYPD director's testimony in Ballard. (Bresnan, 219 N.Y.S.3d at 866). Again, all the courts cited above have recognized that the logs do not simply contain "metadata" or "chain of custody information," as the prosecution continues to erroneously claim.
Given the comprehensive hearing in Ballard, at which this prosecutor's office participated, due diligence and reasonable inquiry required them, at a minimum, to review the logs and err on the side of disclosure. (See C.P.L. § 245.20[7] [mandating a presumption of disclosure]). This court in Torres held that:
[T]he statutory presumption [of disclosure] means the People should not withhold evidence just because they can make a "colorable legal argument" that it does not fall within the statute. Instead, the People should disclose evidence any time there is a "colorable legal argument" that it does fall within the statute.
(79 Misc 3d 1204[A], at *8). Today, "[t]he plethora of cases establishing discoverability [of the logs] reflect much more than a 'colorable legal argument' that disclosure was required." (Bresnan, 219 N.Y.S.3d at 867). While some courts have allowed prosecutors to take "reasonable" legal positions that some material is not discoverable, it is not reasonable for the prosecutors to rely on an outdated and disproven characterization of the material at issue. 
In sum, the prosecution has failed to establish that their certificate of compliance was proper. They commenced this case on June 6, 2024, and they had until ninety days thereafter to validly state ready for trial. (See C.P.L. § 30.30[1][b]). On the ninetieth day after commencing the case, and after business hours, the prosecution filed an invalid certificate of compliance. Therefore, their statement of readiness was illusory. It is now the prosecution's burden to show that any time "should be excluded" under C.P.L. § 30.30[4] and to provide the necessary evidence to substantiate their claims. (E.g., People v. Wearen, 98 AD3d 535, 537 [2d Dep't 2012]). Here, they claim nothing. Still, it is apparent from the face of the papers that this motion was filed on November 7, 2024, which tolls the clock. (See C.P.L. § 30.30[4][a]). The prosecution is responsible for the delay from June 6, 2024, to November 7, 2024. That is 154 days.
The case is dismissed. (See C.P.L. § 30.30[1][b]).
Any remaining issues are moot.
The foregoing constitutes the order and decision of the court.
DATED: February 20, 2025
Queens, NY
Wanda L. Licitra, J.C.C.