People v Burgess (2025 NY Slip Op 52022(U))

[*1]

People v Burgess

2025 NY Slip Op 52022(U)

Decided on December 15, 2025

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 15, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
B. Burgess, Defendant.

Index No. CR-015396-25BX

For the Defendant
Lucía Caballero
(The Bronx Defenders)
For the People
Bronx ADA Andrew Chen

David L. Goodwin, J.

Under the principle of party presentation, the parties frame the issues for decision. A court is not generally required to interpose procedural objections on behalf of the parties.
This drunk-driving case features several procedural defects and pitfalls, but the parties do not raise them. And with those defects set aside, the People have the better argument on substance, albeit narrowly, that they exercised due diligence in connection with their discovery efforts, notwithstanding an apparent systemic breakdown in discovery flow with the relevant police precinct.
Accordingly, the branch of defendant B. Burgess's [FN1]
motion that seeks dismissal is DENIED. Huntley/Mapp/Dunaway hearings are ORDERED.
I. Background
Charges and Arraignment
Defendant Burgess is charged with driving while intoxicated, driving while intoxicated per se, and driving while ability impaired (V.T.L. § 1192(3), (2), and (1)), based on allegations that she was involved in a June 2025 car crash, showed indicia of intoxication, admitted fault to an officer, and later blew a .12 at the precinct. See Accusatory Instrument 1—2. The accusatory instrument was filed on June 2, 2025, and Burgess was arraigned the same day.
Declaration of Readiness and Disclosures
The People filed their certificate of compliance (COC) and declared ready 79 days after arraignment, on August 20, 2025. According to their COC, the People had disclosed extensive discovery, including videos, impeachment material, 911 calls, materials pertaining to the chemical breath test, and body camera footage for ten officers. See People's Resp., Ex. A at 2—4.
However, the People had provided the activity log for just one officer: Officer Howard, the arresting officer who had signed the accusatory instrument. See id. at 2. Activity logs from seven or eight other officers, including the Intoxicated Driver Testing Unit (IDTU) officer, were not yet available. See id. at 5.
The disparity was due to ongoing problems obtaining discovery from the relevant precinct—a problem that also led to missing roll-call logs and chain-of-custody reports. According to their COC, the People had been unable "to obtain activity logs for most officers from" that precinct due to these issues. Id. at 5. The People explained that the materials had been:
requested . . . four times from the [] Precinct. The arresting officer, PO [] Howard, does not have access to said documents. Typically, the precinct discovery liaison obtains said documents for the People. However, there is currently no discovery liaison at the [] Precinct, which is out of the control of the undersigned Assistant District Attorney and the arresting officer. The People will share said documents as soon as we receive actual possession of said documents. The People have shared all body-worn camera and IDTU footage from said officers.
Id. at 6.
The automatic disclosure form filed alongside the COC contained a list of law enforcement personnel involved in the case, three of whom were potential witnesses for the prosecution. One was Officer Howard. The other two (which included the IDTU officer) were among those with activity logs outstanding.
On August 22, the People filed a supplemental COC reflecting disclosure of updated calibration reports.
Post-Readiness Conferral and Court Appearances
About a month later, on Sunday, September 21—one day before the next court appearance on Monday, September 22—defense counsel emailed the People to flag two issues. First, the body camera footage, including the video depicting the chemical test, appeared to be from an unrelated case from January 2025. Counsel asked the People to share the correct videos. Second, the remaining activity logs were still outstanding. See Defense's Mot., Ex. A at 2.
According to the court action sheet, at the appearance the following day on September 22, the court acknowledged the filing of the People's discovery material and that Burgess had shared objections with the People. The matter was adjourned to October 20 for a discovery conference. There is no indication on the court's action sheet for that day that the defense requested, or that the court granted, a C.P.L. § 245.50(4)(c)(i) good-cause extension of time to challenge the People's COC.
The People responded to the defense objections the very next day, Tuesday, September 23. While apologizing for the delay, which was attributed to difficulties logging into evidence.com, the assigned ADA was "fairly certain" that the right videos had been shared initially; due to a lack of an evidence.com receipt, the ADA could not be sure, so he shared the videos again. Id. at 1. As to the activity logs and other material, the ADA conceded that they were still outstanding, while emphasizing again the systemic issues obtaining discovery from the relevant precinct. Id.
Good-Cause Extension Request; Discovery Conference; Motion Schedule
On September 25, defense counsel emailed the court part to request a two-week C.P.L. § 245.50(4)(c)(i) good-cause extension to challenge the People's COC, on the basis that counsel had been out of the office for the past two weeks and had only just been able to review the COC and discovery. Defense's Mot., Ex. B at 1. Counsel followed up on the request October 2. Id. Apparently, counsel did not receive a response either time.
Defense counsel then filed this motion off-calendar on October 10.
The parties appeared before the undersigned on October 20, and the remaining portions of this motion schedule were set. The action sheet for the day has a note that defense counsel never received a response to the good-cause extension request. But the note does not indicate whether the People objected to the request, or even that the request was granted (although, by implication, it must have been at that appearance).
After hours on November 6, the People finally obtained and disclosed the missing activity logs, two chain-of-custody reports, and the roll-call log. The People disclosed those items, and filed a supplemental COC, the following day. People's Resp., Ex. U.
II. The COC Challenge and Response
In her motion, and as a threshold issue, Burgess asserts that her COC challenge is timely because the request for a good-cause extension preserves her right to file her objections to the [*2]COC, even absent a response or ruling, —although she cites no authority in support. Defense's Mot. at 8. She also observes that defense counsel conferred with the People about her COC objections on September 21, within the 35-day deadline to do so, id. at 8, and she affirms that "[d]espite good faith, timely efforts to confer with the ADA, the efforts to resolve the issues were unsuccessful, and no accommodation could be reached," Defense's Aff. ¶ 21.
On substance, Burgess contends that the People's COC was invalid for two main reasons.[FN2]

First, the People had not disclosed the correct body camera footage at the time they filed the COC, doing so only on September 23. See Defense's Mot. at 10—14. This "obvious" error, as well as the People's disclosure of the correct footage "immediately after defense counsel's request," demonstrated a lack of fundamental due diligence by the People in reviewing their own discovery disclosures. Defense's Mot. at 11. Burgess points out that the ADA could have used a colleague's login information to access the correct disclosures on evidence.com and contends that she was prejudiced by the belated disclosure, as all of the footage in question was essential for the preparation of a defense. 
Second, the People failed to disclose the missing activity logs, chain-of-custody reports, and roll-call log before declaring ready. See Defense's Mot. at 14—15. The activity logs of four officers involved in the arrest were a particularly notable omission, and the People had not yet demonstrated diligent efforts to obtain them. See id.
The People's response begins with a short attorney affirmation, sworn under penalty of perjury and dedicated to recounting the procedural history of the case. In the paragraph about the off-calendar filing of the defense's motion, the People appear to concede that "the Court granted Defense a good-cause extension to submit the motion." People's Resp. Aff. ¶ 14.
The next section of the People's response is captioned "Memorandum of Law in Opposition to Defendant's Motion to Dismiss." People's Resp. at 6. Unlike the short affirmation that precedes it, it is unsworn. It begins with the timeline of the People's efforts to obtain and share discovery, which began with two outreach efforts in the middle of June. See id. at 6. However, with three exceptions—an initial, comprehensive June 11 outreach email to several contacts at the precinct, see People's Resp., Ex. Q; a post-readiness follow-up from October 23; and a final email on November 6, see People's Resp, Ex. R—the aforementioned correspondence and outreach is not attached to the People's response as exhibits.
Across the month of July, the People were informed by the relevant precinct of several switches in discovery-liaison personnel, with the main discovery liaison currently away on military leave. In early July, however, the People were informed by an administrative lieutenant that the precinct no longer had a discovery liaison, at which point a Deputy Chief of the DA's [*3]General Crimes Unit informed the administrative lieutenant that the situation was "untenable." Id. at 7.
The assigned ADA's own outreach efforts resumed in the middle of August, with calls to Officer Howard, who did not answer. A different officer responded and told the assigned to contact a yet another officer. See id. at 7.
The timeline then jumps to September, after the People declared ready. However, later in the memorandum of law, the People fill in the gaps, clarifying that Officer Howard "was eventually able to provide a substantial amount of discovery on August 15, 2025," but was unable to access documents such as "the activity logs of other officers, the chain of custody reports, and the patrol roll call log." People's Resp. at 18.
Returning to the timeline: regarding post-readiness efforts, the People requested the activity logs and other missing items on September 24, September 30, and October 23, escalating to the aforementioned administrative lieutenant on November 6. By that time, however, the original discovery liaison had returned from military leave, and was able to provide the missing logs and other material on November 6, which was then disclosed to the defense on November 7. People's Resp. at 7—8.
On substance,[FN3]
the People contend that they exercised due diligence in discharging their discovery obligations. They timely turned over a "voluminous" and "robust discovery package to the defense," consisting of impeachment material, video surveillance, 911 calls, and materials relevant to the chemical test. People's Resp. at 16. And Burgess cannot show prejudice that justifies invalidating the COC. See id. at 21—22.
Regarding the alleged sharing of the incorrect videos, the People assert that the correct videos were shared from the beginning and actually downloaded by the defense, as revealed by audit trail logs that the defense also downloaded. People's Resp. at 16—17. In support, the People attach fifteen exhibits consisting of about 45 pages of those audit trail logs. See People's Resp., Exs. B—P. In any event, the assigned ADA immediately remedied any mistakes in the video disclosures. People's Resp. at 26.
Regarding the missing activity logs, the People emphasize the "extreme difficulty" in dealing with the relevant precinct, requiring the People to contact at least nine officers to obtain discovery, in part through a District Attorney's Office supervisor. People's Resp. at 18. The People point to the detailed initial outreach email from June and the similarly detailed post-readiness followup emails. Id. The People also argue that the activity logs reflected only ministerial entries, "do not contain any information that is relevant to the subject matter of the case," and were duplicative of information already contained in other discovery such as body-camera footage, although it is not clear whether the People are discussing these activity logs or activity logs in general. Id. at 19.
Regarding the roll-call logs and chain-of-custody reports, the People argue that neither [*4]was of relevance to the case. The latter related only to jewelry and shoelaces, and the former simply revealed which officers were involved in the case, which the defense already knew. See id. at 19—20.
In reply, Burgess contests that the correct videos were initially shared, reaffirming her position that the wrong videos were provided in the initial August disclosures. Defense's Reply at 3—4. She also argues that any difficulty between the People and precinct does not undermine the fact that items such as the activity logs were always in the NYPD's possession and, by extension, the People's, although she does not otherwise address the adequacy of the People's actual outreach efforts.[FN4]
See id. at 4—5.
III. Legal Standard
In a case like this one, where the top count is a misdemeanor punishable by a sentence of more than three months, the People must be ready for trial within 90 days. C.P.L. § 30.30(1)(b); see V.T.L. § 1193(1)(b)(i) ("A violation of subdivision two, three, four or four-a of section eleven hundred ninety-two of this article shall be a misdemeanor . . . punishable by . . . imprisonment in a penitentiary or county jail for not more than one year."). If they are not ready within that 90-day window, the accusatory instrument must be dismissed on motion by the defense. C.P.L. §§ 30.30(1)(b), 170.30(e); People v. Labate, 42 NY3d 184, 190 (2024).
Under the current discovery laws, the People must comply with their discovery obligations before declaring readiness for trial. See C.P.L. § 30.30(5)(a). The People do so by, among other things, filing a COC. If the People's COC is later deemed invalid, any declaration of readiness is deemed illusory and the § 30.30 clock continues to run, requiring dismissal if over 90 days have elapsed. See People v. Bay, 41 NY3d 200, 213 (2023).
A COC is invalid if the People have not exercised due diligence and good faith in fulfilling their discovery obligations. C.P.L. §§ 30.30(5)(a)—(b), 245.50(6). Factors relevant to diligence include:
the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the [*5]omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
C.P.L. § 245.50(5)(a). These factors must be assessed holistically, rather than line-by-line, with no one factor or shortcoming being determinative. Id. § 245.50(5)(b); People v. Cooperman, 225 AD3d 1216, 1220 (4th Dept. 2024). The People bear the burden of establishing their own diligence. Bay, 41 NY3d at 213.
IV. Discussion
a. The People have forfeited challenges to the good-cause extension, while Burgess has forfeited challenges to the unsworn record of the People's diligence.
Two threshold procedural issues precede a discussion of the merits. One would have favored the People, the other the defense. But while they are both apparent from the record, there appears to be no requirement that a court invoke them if the parties do not. Accordingly, they are referenced here solely to aid in future review.
First, the record does not clarify whether a good-cause extension was actually warranted, assuming one was (provisionally) granted at the October 20 appearance. Under the revised Article 245, a COC challenge must be made by motion and filed within 35 days of the service of the COC. C.P.L. § 245.50(4)(a), (c). A court may extend that period "for good cause shown" if a request is made "before the expiration of" the 35-day period. Id. § 245.50(4)(c)(i).
Burgess states that while she never received a response to her extension request, the pending request itself extended her deadline to file a COC. But she does not cite any support for that proposition, which is at odds with the text of § 245.50(4)(c). Meanwhile, the People assert that an extension was granted, and it is entirely possible that this happened at the October 20 appearance before the undersigned, although neither side provides a copy of the minutes to clarify whether that was done.
This ambiguity is relevant because Burgess's request for a good-cause extension was procedurally improper. Requests must be made before the 35-day period expires, but Burgess emailed the court part on September 25, 2025, 36 days after service of the COC on August 20. See Gen. Constr. Law § 20. Thus, her request for an extension of time was itself untimely.
As set forth above, the People may have waived this issue by affirmatively conceding it; at the very least, they have not contested it. See Hamer v. Neighborhood Hous. Servs. of Chi., 583 U.S. 17, 20 n.1 (2017) (addressing difference between true waiver and forfeiture by inaction). And while it is possible that a court might permissibly raise sua sponte the untimeliness of a good-cause extension request or of the subsequent motion itself, there appears to be no requirement to police enforcement absent invocation by a party. See Clark v. Sweeney, No. 25-52, 607 U.S. —, 2025 WL 3260170, at *1 (Nov. 24, 2025) (per curiam) (discussing party presentation principle); Misicki v. Caradonna, 12 NY3d 511, 519 (2009) (same). To the contrary, procedural deadlines and requirements like these are classically subject to both waiver and forfeiture. See McIntosh v. United States, 601 U.S. 330, 337 (2024) (discussing federal approach that distinguishes between jurisdictional rules that cannot be forfeited and claim-[*6]processing rules that can); People v. King, 83 Misc 3d 29, 35 (App. Term, 2d, 11th, & 13th Jud. Dists. 2024) (concluding that the People forfeited statutory notice requirement); cf. Day v. McDonough, 547 U.S. 198, 206 (2006) (concluding that a federal court may raise a habeas petitioner's procedural default sua sponte); People v. Chambers, 237 AD3d 441, 441 (1st Dept. 2025) (approving of sua sponte invocation of procedural bar under C.P.L. § 440.10(2)(c)). Thus, even if the People had only forfeited this issue and not waived it, there appears to be no requirement to interpose it on their behalf.
Similarly, Burgess has forfeited any objection to the largely unsworn record of the People's diligence by not raising the issue in her reply brief. The general rule is that factual averments found only in an unsworn memorandum of law are not competent evidence. See People v. Rodriguez, 77 Misc 3d 23, 25 (App. Term, 1st Dept. 2022) (concluding, in the specific context of a COC challenge, that the People's "unsworn, unaffirmed memorandum of law in opposition to defendant's CPL 30.30 motion" was inadequate to demonstrate their due diligence); see also Freedom Mortg. Corp. v. Engel, 198 AD3d 877, 879 (2d Dept. 2021); Byrd v. Roneker, 90 AD3d 1648, 1649 (4th Dept. 2011). The People's record of their diligence here was, with few exceptions, contained entirely in their unsworn memorandum of law, and was not otherwise supported by exhibits—a problem of particular note with regard to representations about outreach made by other people in the District Attorney's office, as the basis of the assigned ADA's personal knowledge is not clear.
However, as with the good-cause extension issue above, the admissibility or competence of a party's evidence is a forfeitable issue. See Matter of Baby Girl G., 220 AD3d 568, 569 (1st Dept. 2023) (Family Court properly considered unsworn affidavits because party did not object); Schwartz v. Aetna Life Ins. & Annuity Co., 214 AD2d 975, 975 (4th Dept. 1995) (admissibility issue was forfeited when "neither party has objected to the admissibility of the medical records submitted by the other"). Burgess did not address this issue in her reply, although she could have. Accordingly, the People's oversight will be excused and the unsworn record of their outreach efforts considered.
b. The People have narrowly demonstrated their due diligence.
On substance, the People have the better argument regarding their diligence, as most of the relevant C.P.L. § 245.50(5)(a) factors weigh in their favor. Among other things, the People disclosed a voluminous amount of discovery well within the 90-day time limit in this relatively straightforward drunk-driving case. The People's pre-readiness outreach, while stymied by communications issue with the precinct, was specific and targeted rather than general, and the People's pre-readiness efforts to obtain the missing discovery—involving escalation both at the precinct and in the District Attorney's office—were generally adequate to show due diligence in this context.
Although the parties focus on the videos, that issue would favor the People even if the initial disclosure had been incorrect. Assuming without deciding that the People did not send the correct body camera and IDTU videos before declaring ready, the People corrected the mistake within (at most) two business days of receiving Burgess's objections—a "prompt remedial action," C.P.L. § 245.50(5)(a), even with the alleged evidence.com log-in issues. The revised Article 245 favors forgiving this kind of lapse, where the People do not disclose documents they possess before declaring ready yet fix the mistake promptly upon being notified by the defense. [*7]See C.P.L. § 245.50(4)(b)—(c); cf. People v. Whitney, — Misc 3d —, 2025 NY Slip Op. 25248, at *5 (N.Y.C. Crim. Ct., Bronx Co. 2025) (David, J.) (concluding that a conferral yielding acquisition of missing material satisfies "a number of the due diligence factors").
Regarding the roll-call log and chain-of-custody materials, the People persuasively argue that those belated discovery materials were "substantively duplicative, insignificant, or easily remedied," C.P.L. § 245.50(a)—an argument that Burgess does not meaningfully contest in her reply. Thus, while Burgess is correct that these materials were in the People's possession, the People have demonstrated that those materials were not central to the defense case or to trial preparation.
The activity logs are another matter. NYPD activity logs are the digital version of a memo book, and are an officer's record of "all . . . work-related activities, including assignments received, tasks performed, and information relating to suspected violations of law." Gould v. N.Y.C. Police Dep't, 89 NY2d 267, 278 (1996). They are "among[] the most basic discoverable material available in a New York City criminal case" and are "routinely disclosed." People v. Meadows, 85 Misc 3d 1215(A), 2025 NY Slip Op. 50208(U), at *3 (N.Y.C. Crim. Ct., Queens Co. 2025) (Licitra, J.); see also People v. Othman, 85 Misc 3d 1240(A), 2025 NY Slip Op. 50392(U), at *2 (N.Y.C. Crim. Ct., Kings Co. 2025) (Torres, J.) ("Police Officer activity logs are in almost every case and not some obscure report."). The belated disclosure of "routinely produced disclosure materials" counts heavily against a showing of diligence. Bay, 41 NY3d at 215.
Here, the People did not disclose the logs until nearly two and a half months after declaring ready. And while the People downplay the importance of the logs, as they did with the roll call and chain-of-custody documents, they do not clarify whether they are addressing activity logs in general or these logs in particular. Their memorandum reads more like the former than the latter, as there are no specifics provided about whether these particular logs duplicated material otherwise shown in body camera footage or available elsewhere. And while the People argue that Burgess must demonstrate prejudice in order to invalidate the COC, the revised Article 245 did not change the background requirement that "the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC." Bay, 41 NY3d at 213. Thus, to the extent that prejudice is an element of the due diligence analysis, the People bear the burden of showing lack of prejudice—and they have not persuasively done so here.
The People also did not avail themselves of the option of requesting additional time under C.P.L. § 245.70(2), or seeking refuge in the other procedural vehicles that might have allowed them to declare ready despite lacking the activity logs. See Bay, 41 NY3d at 215. As several judges in this County have observed, it is far better for the People to seek a ruling in advance than to declare ready without core discovery in their possession and risk a finding of invalidity. See, e.g., People v. Santos, 86 Misc 3d 1203(A), 2025 NY Slip Op. 50854(U), at *5 (N.Y.C. Crim. Ct., Bronx Co. 2025) (Moore, J.) ("The People may not now retroactively seek forgiveness for belated disclosures when they could have timely sought additional time under the statutory safeguards available to them[.]"); People v. Santos, 79 Misc 3d 1233(A), 2023 NY Slip Op. 50778(U), at *5 (N.Y.C Crim. Ct., Bronx Co. 2023) (Ortner, J.) ("If there had been some legitimate obstacle to obtaining and disclosing the items in timely fashion, or if there were other discovery-related challenges unique to this case that made timely compliance with discovery unduly burdensome, the better and proper course would have been to seek a ruling from the [*8]Court in advance."). That the People did not do so is puzzling because they declared ready with plenty of time left on the clock; they were not rushing to the finish line at the eleventh hour, but instead had more than a week remaining in the 90-day period.
The People's post-readiness outreach to obtain the logs was also underwhelming. While the People did make several attempts, the efforts did not match the urgency of the situation, especially as the People knew the logs were missing, having flagged them as outstanding in their COC. As set out above, the People reached out September 24, September 30, and October 23, escalating to the administrative lieutenant on November 6. But the People do not appear to have engaged in meaningful outreach prior to September 24, or before defense counsel reminded them that the logs were outstanding; nor did they make efforts to obtain the logs for much of October. That those efforts might ultimately have been futile makes little difference under these circumstances.
But while this factor weighs against the People, and rather significantly so, it does not quite tip the scales against an overall finding of due diligence. For one, Burgess does not focus on the inadequacy of the People's outreach efforts in her reply brief, resting instead on the fact that these materials were always in the People's constructive possession—true, see C.P.L. § 245.20(2), but not the full picture in terms of diligence. She also does not tie these missing materials to the People's actual readiness. And unlike the belated disclosure in the "close call" of People v. Felix, 86 Misc 3d 1242(A), 2025 NY Slip Op. 51196(U) (N.Y.C. Crim. Ct., Bronx. Co. 2025), the relevant undisclosed material in this drunk-driving case consisted of only the activity logs, not (as in Felix) the activity logs and the inarguably central IDTU video. Id. at *1, 5. And, as set forth above, most of the other relevant § 245.50(5)(a) factors weigh in favor of the People.
In sum, and as in many of these cases, the relevant due diligence factors include many that favor the People, along with one or two that strongly favor the defense. But all in all, the People have met their burden of showing that they exercised due diligence in discharging their discovery obligations before declaring ready. Because reasonable jurists could reach a different conclusion, Burgess is encouraged to seek appellate review of this determination should her right to do so survive an eventual disposition.
* * *
For the reasons set forth above, the People's COC is deemed valid. To the extent necessary, their supplemental COCs are deemed valid too. And because there appears to be no argument that the instrument is vulnerable to dismissal on speedy trial grounds if the COC is valid, the branch of the motion seeking dismissal is DENIED.
Burgess also seeks several hearings, primarily seeking to suppress the fruits of an alleged unlawful stop/seizure, as well as to suppress any statements made to law enforcement for which the People served proper § 710.30(1)(a) notice. Since the Huntley hearing would arise at least in part out of the same facts as any hearings related to the seizure, judicial economy favors GRANTING Mapp/Huntley/Dunaway hearings, as well as any "special" variants of a Mapp hearing that Burgess has requested. See People v. Mendoza, 82 NY2d 415, 429—30 (1993).
Any Sandoval/Molineux/Ventimiglia/preclusion issues are referred to the trial court. Any request for relief not specifically mentioned is DENIED.
Dated: December 15, 2025
Bronx, NY
David L. Goodwin
Judge of the Criminal Court

Footnotes

Footnote 1:The version of this decision submitted for electronic publication has been lightly redacted to remove certain identifying information.

Footnote 2:Burgess briefly mentions "FDNY documents" as among those materials that were outstanding when the People certified ready. Defense's Mot. at 8. But she does not appear to mention those documents again, and they are entirely absent from the argument section of her memorandum. So while this reference prompted a response from the People, see People's Resp. at 20—21, the issue is otherwise undeveloped and will not be addressed further. In any event, the outcome would be the same even if those materials were considered.

Footnote 3:The People dedicate seven pages of their response to (1) arguing that the revised Article 245 standards should apply and (2) a claim that dismissal is no longer the default remedy absent a showing of prejudice. See People's Resp. at 8—15. The defense does not appear to contest the application of the revised standards, and as the COC is valid, there is no need to reach the People's argument about remedies.

Footnote 4:Burgess mentions that "any lapse in communication between the two agencies cannot be imputed to Ms. Burgess and cannot affect her constitutional right to a speedy trial." Defense's Reply at 5 (emphasis added). But Burgess's initial motion was premised on violations of her statutory rights under C.P.L. § 30.30, not her (very different) rights under the federal and state constitutions—a brief reference in her notice of motion notwithstanding, see Defense's Mot. at 1. As with the FDNY documents mentioned in footnote 2, this issue is not sufficiently developed and will not be addressed further.